UNITED STATES of America, Plaintiff-Appellee,

v.

Charles Steven BALLARD, a/k/a James Bishop, Defendant-Appellant.

No. 77–5572.

United States Court of Appeals, Fifth Circuit.

May 26, 1978.

**914**

Jack Peebles (Court-appointed), New Orleans, La., for defendant-appellant.

John P. Volz, U. S. Atty., Mary W. Cazalas, Albert J. Winters, Jr., Irving J. Warshauer, Asst. U. S. Attys., New Orleans, La., for plaintiff-appellee.

Before MORGAN and GEE, Circuit Judges, and KING,* District Judge.

LEWIS R. MORGAN, Circuit Judge:

Charles Steven Ballard appeals from a conviction pursuant to 18 U.S.C.A. § 841(a)(1) (1976), for possession of heroin with intent to distribute. The sole issue on appeal is whether the evidence seized during a search of defendant's baggage should have been suppressed. We agree with the defendant that the evidence was improperly admitted at trial; therefore, we reverse.

Defendant was arrested following an investigatory stop and subsequent search at the New Orleans airport. The following sequence of events led up to his arrest. On April 4, 1977, an anonymous tip was received by the drug unit of the New Orleans Police Department. The substance of this tip was that a black male, surnamed "Tullos," five feet nine inches tall, weighing 140 pounds, with a thin face and torso, would be arriving that evening at the New Orleans airport on a flight from Los Angeles. In response to this information, Special Agent John D. Donald, of the Drug Enforcement Administration, began observing passengers arriving on flights from Los Angeles. In addition to the physical attributes mentioned in the tip, agent Donald looked for characteristics listed on the "airport drug courier profile," a compilation of factors considered by the DEA to be indicative of drug activity. Included among those characteristics listed are: (a) unusual nervousness; (b) no luggage or very limited luggage; (c) possession of an unusually large amount of cash, especially when in bills of small denominations; (d) unusual itinerary, taking circuitous routes from cities known to be source cities for narcotics, such as flying to New Orleans from Los Angeles by way of St. Louis; (e) arriving from a known narcotics source city; (f) paying for an airline ticket in currency of small denominations; (g) purchasing a one-way ticket; (h) use of an alias; (i) use of a false telephone number on an airline reservation; (j) placing a telephone call immediately upon arrival at the airport; and (k) travel by a known narcotics trafficker.

Observing flights arriving at 8:05 p. m., 9:02 p. m., and 10:20 p. m., Agent Donald detected no one fitting either the tip or the profile. Finally, at 3:39 a. m. on April 5, 1977, Delta flight number 196 arrived from Dallas. Defendant, a black male, six feet tall and weighing approximately 170 pounds was a passenger on flight 196. Agent Donald observed the defendant leave the plane and walk hurriedly down the concourse carrying a thin plastic suit bag. According to the agent, defendant appeared to be very nervous, looking back over his shoulder at least once. Defendant sought directions from an airport employee, who pointed toward an escalator leading to both the baggage area and taxi stand. After descending the escalator, defendant turned and began heading for the taxis, instead of continuing to the baggage area. At this point he was stopped by Agent Donald who identified himself as a drug agent. They were immediately joined by another police officer who had been assisting the surveillance. Defendant, in response to an inquiry

---

* United States District Judge for the Southern District of Florida, sitting by designation.

by Agent Donald, was unable to produce any identification other than his airplane ticket, which was in the name of James Bishop. Defendant was asked to accompany the two officers to a police office, 100 feet away. Once at the office, defendant agreed to allow a search. The resulting search of his person and his luggage revealed the heroin. Defendant was then formally arrested and apprised of his constitutional rights.

Defendant contends that the investigatory stop was illegal and that the evidence obtained during the search was tainted by that initial illegality and therefore should have been suppressed under the "fruit of the poisonous tree" doctrine. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The government offers several justifications for the stop and search, any one of which, if sustained, would provide sufficient grounds for affirming the conviction.

■ The government first argues that there was probable cause to stop Ballard. They assert that the tip was corroborated by Agent Donald's observations and further reinforced by the presence of several characteristics listed on the drug courier profile. This position is totally without merit. The only similarity between the individual described in the tip and Ballard is that they are both black males. The name and physical appearance are obviously dissimilar, and the agents, at the time of the stop, had no knowledge of Ballard's city of departure, because flight 196 carried passengers from San Francisco, Las Vegas, and Dallas in addition to Los Angeles. In short, the tip was in no way corroborated by the agent's observations.

Nor can it be said that the elements of the courier profile, considered alone or in conjunction with the tip, were sufficient to provide probable cause. It is argued that defendant fit four characteristics: he was nervous, he was traveling from a known narcotics source city, he was carrying limited luggage, and he was walking rapidly. Of these four we can immediately discount two. Although defendant had in fact

boarded the plane in Los Angeles, the officers did not possess that knowledge at the time of the stop; and the fact that defendant carried limited luggage would be helpful only if the agents were more certain of that fact at the time they stopped Ballard. Because defendant was stopped before he left the building, the agents had no way of knowing whether defendant was going to get a breath of fresh air, was going to get a taxi to wait while remaining luggage was retrieved, was going to see if a friend were there to meet him, or was in fact leaving the airport carrying but a single light bag. Considering the remaining factors of the profile and the elements of the tip which were corroborated, the presence of a nervous black male walking rapidly through the airport in New Orleans, falls far short of establishing the probable cause required to justify the search.

■ The government next contends that the stop, which was only an investigatory stop, can be upheld if the officers had reasonable suspicion to believe that the defendant was engaged in criminal activity. It has been recognized that police officers may briefly stop an individual and make inquiries if the officer reasonably suspects that the detained individual is engaged in some sort of illegal activity. *United States v. McDaniel*, 550 F.2d 214 (5th Cir. 1977). The reasonable suspicion that is required must be more than a mere hunch; we must focus on "the specific reasonable inferences which [the officer] is entitled to draw from the facts in light of his experience." *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889, 909 (1968). Unless, at the time of the stop, the officers could point to "specific articulable facts . . . that reasonably warrant suspicion . . .," the stop cannot be justified. *United States v. Brignoni-Ponce*, 422 U.S. 837, 884, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607, 618 (1975). Viewed in this light, we cannot say that the facts on which Officer Donald relied were sufficient to create a reasonable suspicion that Ballard was engaged in criminal activity. We already indicated that the uncorroborated tip offers no support for the

government's position. Similarly, the elements of the courier profile that were present in this case—appearing to be nervous, hurriedly walking in the airport, apparently carrying little baggage, and suspicion of arriving from a known narcotics source city—do not in any significant way operate to distinguish Ballard from the general public. Because, as discussed above, we give little weight to the amount of luggage carried by Ballard, and the suspicion that he arrived from Los Angeles, Ballard's supposed nervousness and his walking pace are the only substantial factors offered to justify the search, and we would be most reluctant to hold that the police can stop anyone exhibiting only those two characteristics. We conclude that Officer Donald did not have reasonable suspicion to stop Ballard and that, therefore, the stop was in violation of the fourth amendment.

 This does not mean that the evidence was necessarily admitted improperly. In response to appellant's contention that the search was tainted by the illegal stop, the government contends that Ballard consented to the search and thus removed the taint of the stop. We disagree, and find that the trial court erred when it held Ballard's consent to have been voluntarily given. Although in this circuit, consent can, in proper circumstances, validate a search following an illegal arrest, those circumstances are not present here. In *Bretti v. Wainwright*, 439 F.2d 1042 (1971), this court upheld a search following an illegal arrest. The court based its holding on two factors, the absence of any coercive tactics and, more importantly, the presence of significant intervening factors. The most significant factor relied upon by the court was a warning informing defendant of his right to refuse to permit the search in addition to the standard elements of the *Miranda* warning. The court reasoned:

> While warnings prior to a consensual search may not have the same indispensability as those required prior to a confession . . . they do help insure that the consent is free, voluntary, and untainted by the arrest's possible illegality.

In the instant case the presence of these warnings leads us to conclude that any coercion flowing from the possible illegality of appellant's arrest was dissipated. 439 F.2d at 1046. Similarly in *United States v. Fike*, 449 F.2d 191 (5th Cir. 1971), this court held that advising a defendant of his right to refuse to permit a search was a sufficient intervening occurrence to remove the influence of a prior fourth amendment violation. In the present case, the government points to no such intervening factors; they simply point to the finding of the trial court that the consent was voluntary. Ordinarily, such findings are not to be overturned unless clearly erroneous; however, the finding below was based on the unwarranted assumption that the stop was justifiable. When trying to establish that there was a voluntary consent after an illegal stop, the government has a much heavier burden to carry than when the consent is given after a permissible stop. *See United States v. Jones*, 475 F.2d 723 (5th Cir. 1973). In this case, the government has failed to establish the existence of any intervening circumstances which would serve to show that the consent was sufficiently attenuated from the illegal stop. Furthermore, a review of the record convinces us that there are no such intervening circumstances present in this case. On these facts, we must conclude that Ballard's consent was not voluntarily given and thus cannot operate to remove the effects of the illegal stop. Based on our conclusion that there was no probable cause to stop Ballard, that there was no reasonable suspicion to justify an investigatory stop, and that the government did not sustain the burden of showing voluntary consent, we find that the evidence gathered from the search was improperly admitted. Accordingly, the conviction is

REVERSED.