UNITED STATES of America,
Plaintiff-Appellee,

v.

Dudley Lee BERRY, a/k/a David Sarver,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Jessica Linda Ann ZABISH, a/k/a
Joanne Sarver,
Defendant-Appellant.

Nos. 79–5471, 79–5472.

United States Court of Appeals,
Fifth Circuit.
Unit B

Feb. 13, 1981.

Bruce E. Pashley, Merren & Pashley, Atlanta, Ga., for defendants-appellants.

William S. Sutton, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before MORGAN, ANDERSON and THOMAS A. CLARK, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Appellants, Dudley Lee Berry and Jessica Linda Ann Zabish, in this consolidated appeal were convicted of possessing cocaine hydrochloride with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. In addition, appellant Zabish was convicted of simple possession of cocaine hydrochloride in violation of 21 U.S.C. § 844. Appellants seek reversal of their convictions, claiming *inter alia* error in the failure to suppress evidence that the appellants assert was seized in violation of their Fourth Amendment rights. For the following reasons we reject the appellants' claims and affirm the convictions in the district court.

This court has recently encountered a great number of airport drug seizure cases. The decisions on the Fourth Amendment issues often turn on minute factual differences in the cases and therefore require careful, case-by-case consideration. Because these facts are so crucial to our inquiry, we present them here in detail.

On January 30, 1979, at approximately 11:30 a.m., appellants were observed by DEA Agent Paul Markonni and Detective C. B. Denton deplaning Delta flight 1160 from Miami, Florida. Appellants were among the last to deplane and appeared to be in a hurry. Agent Markonni had a vague recollection of having seen a picture of Berry, although at the time he could not remember the details or the circumstances. As appellant Berry was leaving the gate area he stared intently at the drug enforcement officers. The agents began to follow the appellants down the concourse, and both appellants looked back nervously at the agents. While waiting in the baggage claim area, both appellants continued to glance nervously at the agents. Appellant Berry walked past the agents several times, staring at them intently. After claiming the luggage and leaving it with Berry, Zabish exited the terminal. Meanwhile Berry summoned a skycap and proceeded to the outside of the terminal.

As Berry headed toward the taxi stand where Zabish was waiting, Markonni approached him, identified himself and asked if he could talk with Berry. In response to Markonni's inquiries Berry stated that he was traveling alone, but upon request he produced a ticket folder containing tickets in the name of "David Sarver" and "Joanne Sarver." Berry identified himself as "David Sarver," but when asked for additional identification he offered a Georgia driver's license in the name of Dudley Lee Berry. At this point Berry admitted that Zabish was traveling with him, and Mar-

konni motioned to her to join them. After identifying himself Markonni asked Zabish her name, and she responded "Joanne Sarver." Markonni revealed to her that Berry had already admitted his true identification and asked whether she wanted to change her answer. Zabish made no verbal reply, but became visibly nervous. Markonni then asked if the appellants would accompany him to the DEA office for further questioning, and Berry agreed. Inside the terminal Berry asked Markonni whether he and Zabish had violated any law, and Markonni informed him that they had violated Georgia law by giving false identification to an officer. He further told Berry, however, that "there would be no problem" if they consented to a search of their persons and luggage and no drugs were found.

Inside the DEA office Markonni asked the appellants for their consent to allow a search, after informing them of their right to refuse to allow the search as well as their right to consult with an attorney. After some hesitation appellants agreed to a search.[1] In searching Berry's suitcase the agent discovered a white powdery substance in a film shield inside a shaving bag. Meanwhile officer Shirley Crenshaw arrived and was instructed to conduct a "pat down" search of Zabish in an inner office. During officer Crenshaw's search of Zabish, Zabish attempted to swallow a container of cocaine which she had been holding in her coat pocket. Both appellants were placed under arrest and read their *Miranda* rights. After their arrest Berry told Detective Denton that it was unnecessary to arrest Zabish because he had placed the cocaine in her pocket and she did not know it was there.

After proper processing and indictment, appellants were arraigned and entered pleas of not guilty. Appellants made several pretrial motions, including a motion to suppress evidence, a motion for severance,

---

1. Appellants in their suppression hearing testimony disputed the facts that Markonni informed them of their right to refuse to allow a search and that they willingly consented to a search. Appellants testified that they thought they had no choice in allowing the search. However, the magistrate chose to believe the testimony to the contrary of the drug agents, and because the district judge adopted his findings we are bound by those credibility determinations. *See United States v. Bowles*, 625 F.2d 526, 536 (5th Cir. 1980).

and a motion for the production of scientific testing procedures. These motions were submitted to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A, B). On the motion for severance, despite his finding that severance was not *required*, the magistrate recommended granting the motion. The magistrate also ordered production of all scientific tests, but denied the motion to suppress evidence primarily on the ground that the initial contact with appellant Berry was not a seizure within the meaning of the Fourth Amendment. The magistrate further found that even if the appellants were seized, their voluntary consent to the search attenuated the taint of any illegal seizure. The district judge rejected as a matter of law the magistrate's position that no seizure had occurred, but agreed with the magistrate's other findings in the case and denied the motion to suppress. Appellant Berry was tried on May 17–18, 1980, and found guilty of possession of cocaine with intent to distribute. Appellant Zabish was tried on May 30–June 1, 1980, and convicted of possession with intent to distribute and simple possession of cocaine. Both defendants were sentenced on July 2, 1980.

### I.

The primary issue in this appeal is whether the district court erred in its denial of appellants' motion to suppress the evidence. According to recent case law on airport drug seizures, this issue involves an inquiry into (1) whether the contact of the drug agent with the defendants was a "seizure" within the meaning of the Fourth Amendment, and (2) if a seizure, whether the drug courier profile characteristics exhibited in the case, along with other factors, provided a reasonable, articulable suspicion justifying the stop.

 It is an accepted principle, at least in this circuit, that not every contact between law enforcement officers and a citizen is a "seizure" within the meaning of the Fourth Amendment. *United States v. Elmore*, 595

F.2d 1036 (5th Cir. 1979), *cert. denied* 447 U.S. 910, 100 S.Ct. 2998, 64 L.Ed.2d 861 (1980). In footnote 16 of *Terry v. Ohio*, 392 U.S. 1, 19, n. 16, 88 S.Ct. 1868, 1878–1879, 20 L.Ed.2d 889 (1968), the Supreme Court recognized the principle that "not all personal intercourse between policemen and citizens involves 'seizures of persons.'" However, in *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), a majority of the Court refused to hold that this principle applied to the facts of the case before the Court. The case involved an airport drug seizure, similar in many respects to the present case. The Court splintered in its decision upholding the conviction. Justices Stewart and Rehnquist adopted the position that no "seizure" had occurred and thus the Fourth Amendment had not been violated. Justices Powell and Blackmun and the Chief Justice refused to reach that issue because the courts below had not considered it. 446 U.S. at 560, 100 S.Ct. at 1880, 64 L.Ed.2d at 512. These three Justices, assuming that a "seizure" had occurred, upheld the conviction on the ground that reasonable suspicion existed to justify the stop. Justices White, Brennan, Marshall and Stevens dissented from the decision, assuming also that the appellant was "seized" but concluding that reasonable suspicion did not exist for the seizure.[2]

Because the plurality opinion of the Supreme Court in *Mendenhall* is not binding precedent on this court concerning the "seizure" issue, we are bound by the standard announced in *United States v. Elmore, supra*, 595 F.2d 1036. *See United States v. Robinson*, 625 F.2d 1211, 1215 (5th Cir. 1980). In *Elmore* the court held that where a DEA agent approached the defendant, identified himself and asked to see defendant's airplane ticket, no "seizure" occurred until the agent removed the ticket from defendant's presence. The test implicitly followed by the court to determine whether a seizure had occurred was similar to the one announced in *Mendenhall*—whether,

---

**2.** For an excellent discussion of the *Mendenhall* decision and other aspects of search and seizure law, see Judge Randall's opinion in *United*

States v. Robinson, 625 F.2d 1211 (5th Cir. 1980).

under the totality of the circumstances, a reasonable person would have thought he was not free to leave. *See United States v. Robinson, supra,* 625 F.2d at 1216. Considering the totality of the circumstances, the court in *Elmore* found that the defendant reasonably would believe that he was not free to go when his airplane ticket was removed from his presence. *Cf. United States v. Bowles,* 625 F.2d 526 (5th Cir. 1980).

 In the case at bar the magistrate below considered the question of "seizure" and concluded that appellants were not seized within the meaning of the Fourth Amendment. The district judge rejected this finding on the basis that the law did not permit a finding of no "seizure."[3] The law in this circuit now permits such a finding, and we can apply the appropriate legal standard to the facts because there is no factual dispute about the initial encounter. *Cf. United States v. Robinson, supra,* 625 F.2d at 1216. We agree with the magistrate that the initial contact by the drug agents with the appellants was merely a police-citizen contact, requiring neither probable cause nor articulable suspicion. When approached by Agent Markonni and asked to identify himself, appellant Berry gave a false name and then voluntarily produced his real identification. Up to this point no "seizure" had occurred because Agent Markonni had not coerced or intimidated the appellant into believing that he was not free to go. Similarly, although the drug agents asked appellant Zabish to join them and asked her to identify herself, appellant Zabish was not "seized" within the meaning of the Fourth Amendment because she willingly cooperated with the agents. As the magistrate indicated, however, appellants were "seized" somewhere in route to the DEA office. Appellants were "seized" at the time Agent Markonni told appellant Berry that they had violated Georgia law by giving false identification to a law enforcement officer.[4] Although appellants were not technically under arrest at this point in time, they reasonably could have believed they were not free to leave.[5] Thus, the issue remaining to be resolved by this court is whether at the point appellants were "seized," the drug agents had reasonable suspicion to support a limited investigation.

## II.

 Under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the determination of whether a seizure is supported by reasonable suspicion requires an evaluation of the articulable facts known to the police officer at the time of the seizure. Resolution of the reasonable suspicion issues in this case requires consideration of the "drug courier profile"[6] recently utilized

---

3. At the time the magistrate and district judge originally heard this case, *United States v. Elmore, supra,* 595 F.2d 1036, had not yet been decided.

4. Georgia Code Section 26–2506 provides:

 A person who gives a false name or address to a law enforcement officer in the lawful discharge of his official duties, with the intent of misleading the officer as to his identity is guilty of a misdemeanor.

 Although Markonni did not actually make an arrest under this Georgia statute, appellants argued in oral argument that appellants reasonably could have believed they were under arrest and that, as a federal agent, Markonni was not authorized to make such an arrest. Because Markonni did not actually make an arrest under the Georgia statute and indeed informed Berry that "there would be no problems" if no drugs were found, we do not reach the question whether Markonni could have arrested appellants for giving false names. The significance of Markonni's statement to Berry concerning the violation of Georgia law was simply that from that moment on Berry reasonably could have known he was not free to leave.

5. Although Markonni's statement was made to Berry and the record is not clear whether Zabish overheard the comment, we shall assume as did the magistrate that Zabish heard the comment and was likewise "seized" at the point Markonni mentioned the violation of Georgia law.

6. The "drug courier profile" is a list of characteristics composed by Agent Markonni for drug agents' use in identifying drug couriers in airports. The list includes seven "primary characteristics" and four "secondary characteristics," as noted in *United States v. Elmore, supra,* 595 F.2d at 1039, n. 3.

by drug enforcement officers to apprehend drug couriers. This court first considered the drug courier profile in *United States v. Ballard*, 573 F.2d 913 (5th Cir. 1978), and found that three factors of the profile—nervousness, arrival from a drug source city and carrying little luggage—were insufficient, alone, to establish reasonable suspicion of criminal activity. The court in *United States v. Elmore*, supra, 595 F.2d at 1039, noted also that the *profile*, without more, was insufficient to justify an investigative stop. Because of the potential for including innocent citizens as profiled drug carriers, other circuits [7] have joined this circuit [8] in viewing critically the use of the drug courier profile to establish reasonable suspicion.

In the Supreme Court's per curiam opinion in *Reid v. Georgia*, —— U.S. ——, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980), the Court considered the drug courier profile issue, as did the Fifth Circuit in *United States v. Ballard supra*, 573 F.2d 913, without deciding whether the initial contact constituted a seizure within the meaning of the Fourth Amendment. The court below relied on factors that (1) the defendant had arrived from a drug source city, (2) the defendant arrived early in the morning, (3) the defendant and his companion attempted to disassociate themselves, and (4) the defendant and his companion carried little luggage. The defendant appeared to consent to a search in the DEA office, but on the way dropped his bag and ran from the officers. The Supreme Court held that the introduction into evidence of the cocaine seized from the dropped bag violated the defendant's Fourth Amendment rights because, as a matter of law, the agents could not "have reasonably suspected the petitioner of criminal activity on the basis of [the] observed circumstances." *Reid v. Georgia, supra*, —— U.S. ——, ——, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890, 894. The court noted that most of the observed characteristics in the case described innocent travelers, and the Court expressed disapproval in allowing these innocent travelers

---

The seven primary characteristics are (1) arrival from or departure to an identified source city; (2) carrying little or no baggage, or large quantities of empty suitcases; (3) unusual itinerary, such as a rapid turnaround time for a lengthy airplane trip; (4) use of an alias; (5) carrying unusually large amounts of currency in the many thousands of dollars, usually on their person, in briefcases or bags; (6) purchasing airline tickets with a large amount of small denomination currency; and (7) unusual nervousness beyond that ordinarily exhibited by passengers.

The secondary characteristics are (1) the almost exclusive use of public transportation, particularly taxicabs in departing from the airport; (2) immediately making a telephone call after deplaning; (3) leaving a false or fictitious call-back telephone number with the airline being utilized; and (4) excessively frequent travel to source or destination cities. *Id.*

7. *See United States v. Buenaventura-Ariza*, 615 F.2d 29 (2nd Cir. 1970); *United States v. Andrews*, 600 F.2d 563 (6th Cir.), *cert. denied*, 444 U.S. 878, 100 S.Ct. 166, 62 L.Ed.2d 108 (1979); *United States v. McCaleb*, 552 F.2d 717 (6th Cir. 1977); *United States v. Scott*, 545 F.2d 38, 40, n. 2 (8th Cir. 1976). *But see United States v. Vasquez*, 612 F.2d 1338 (2d Cir. 1979); *United States v. Smith*, 574 F.2d 882 (6th Cir. 1978).

8. *See United States v. Pulvano*, 629 F.2d 1151, 1155, n. 1 (5th Cir. 1980). We reiterate the court's concern with the routine stopping of citizens traveling by air within this country. The fact that many of the drug courier profile characteristics are consistent with innocent behavior convinces this court that the profile characteristics should be used only sparingly, if at all, as a justification for questioning citizens. The profile serves a proper function in helping drug agents identify potential drug couriers, but unless other suspicious characteristics are observed by the drug agents, the agents usually should not engage in an investigatory stop based solely on the drug courier profile characteristics.

We realize that the holding in *United States v. Elmore, supra*, 595 F.2d 1036, permitting a request for identification and consent to search without articulable suspicion potentially moots the question of reasonable suspicion in many airport drug seizure cases. We acknowledge that a citizen may voluntarily speak with a police officer without implicating the Fourth Amendment, but note that this position theoretically permits absolutely random, although brief, stops of innocent citizens. Although this court has not had occasion to address facts involving totally arbitrary and random stops of citizens in public airports, such a case would present seriously troublesome questions for the court to resolve. However, those questions remain for another day.

to be subject to random searches and seizures. Although not a complete rejection of the drug courier profile, the Supreme Court's opinion implicitly admonishes the lower courts to consider carefully cases decided on the basis of the drug courier profile, ascribing little weight to characteristics that describe large numbers of innocent travelers.

■ In light of the Supreme Court's opinion in *Reid v. Georgia, supra,* —— U.S. ——, 100 S.Ct. 2752, 65 L.Ed.2d 890, the questioning of the appellants in this case would have been improper if the initial contact was a seizure. However, because additional information was obtained from the appellants between the time of the initial contact and their seizure on the way to the DEA office, we hold that reasonable suspicion existed prior to the time of the seizure. When asked to identify himself and produce identification, appellant Berry falsely identified himself to the drug agents and revealed that he was traveling under an alias. Appellant Zabish also falsely identified herself. Although traveling under an alias is not conclusive evidence of criminal activity, falsely identifying oneself to a police officer is a violation of Georgia state law.[9] When considered in light of other circumstances, appellants' actions created a reasonable suspicion of criminal activity. Agent Markonni testified that upon proper identification he recognized the name Berry in connection with another pending drug case in Memphis. The nervous side glances at the drug agents by Zabish and appellant Berry's stares at the agents further support a finding of reasonable suspicion. The other factors of the drug courier profile present in the case—arriving from Miami and being the last to deplane—are relevant, but carry very little weight when viewed in isolation of the more significant factors. Therefore we

hold, particularly relying upon the false identification given to the drug enforcement officers, that reasonable suspicion of criminal activity existed in this case prior to the seizure of appellants.

■ Because we have held that appellants were not illegally seized, we are not required to reach the issue crucial to the lower court's decision of whether appellants' consent to the search attenuated the taint of an illegal seizure.[10] Although the drug agents could not have searched appellants' luggage without their consent or a search warrant, the record contains sufficient evidence of appellants' voluntary consent, regardless of whether this consent was in the best interest of appellants. We will not disturb the finding of the district court that appellants voluntarily consented to a search of their luggage and persons after appropriate Fourth Amendment warnings.[11]

### III.

In addition to their Fourth Amendment claims appellants raise several other issues. The issues raised by each appellant are independent of one another and will therefore be addressed separately.

### A. *Zabish's Claims.*

■ In Zabish's trial the district judge excluded as hearsay exculpatory statements concerning Zabish made by Berry to officer Denton. Zabish alleges error in prohibiting officer Denton from testifying that the exculpatory statements were made to him on the basis that the statements were either not hearsay statements or within an exception to the hearsay rule. Zabish claims that the statements she sought to elicit were not statements offered to prove the truth of the matter asserted therein under Rule 801(c) of the Federal Rules of Evidence. However, appellant does not suggest the purpose for which the statement was offered if not for the truth of the matter asserted.

---

**9.** *See* note 4 *supra.*

**10.** Although we are not presented with this issue, we note with approval the analysis suggested in *United States v. Robinson, supra,* 625 F.2d at 1219–20.

**11.** *See* note 1 *supra.* We stress that appellants' consent was essential to the decision in this case. The reasonable suspicion that authorized the drug agents to seize the appellants permitted only a brief detention of appellants and did not give the drug agents the right to search their persons or luggage without their consent.

Because the statement was most likely offered for the purpose of showing that Zabish did not know about the drugs, the district judge did not err in refusing to admit the statement. Furthermore, the statement does not fall within any of the recognized exceptions to the hearsay rule.

Appellant Zabish additionally argues that the Georgia State Crime Laboratory's policy of not providing defendant's experts with "drug standards" [12] with which to compare the seized drugs violates the defendant's due process rights. This claim is without merit based on our ruling in *United States v. Gaultney*, 606 F.2d 540 (5th Cir. 1979).

### B. *Berry's Claims.*

██ Appellant Berry argues that the district court's refusal to allow officer Denton to testify regarding the exculpatory comments made by Berry concerning Zabish forced him to take the stand after his conviction and before his sentencing and testify regarding what he told Officer Denton. Appellant Berry is correct in arguing that any use of a defendant's forced, self-incriminating statements violates his Fifth Amendment rights; however, appellant Berry waived these rights by representing to the court by affidavit that he would testify on Ms. Zabish's behalf if their trials were severed and his trial was held first. Furthermore, although Berry argues that his testimony was used in sentencing him, appellant has presented no evidence that his testimony was considered by the judge in sentencing.

██ In addition appellant Berry argues that he was prejudiced by the government's failure to disclose various items including an infra-red spectagram, the government chemist's personal work notes and the "Drug Enforcement Administration Analytical Manual." The magistrate in the case found that his own pretrial order requiring disclosure of the documents was satisfied. The infra-red spectagraph was a reference standard, generally available in the literature. Under Rule 16(a)(1) of the Federal Rules of Criminal Procedure appellant had a right to the *results* or *reports* of any examinations, and therefore the personal work notes were not required to be disclosed. The "Drug Enforcement Administration Analytical Manual" was ruled at trial as irrelevant and was likewise not required to be disclosed. Therefore the district judge did not abuse his discretion in ruling that the government had complied with both Rule 16 of the Federal Rules of Criminal Procedure and the magistrate's order.

The remaining issues alleged as errors committed at trial include the sequestration of appellant's expert witness, the court's comment limiting the discussion of different kinds of cocaine, and the use of certain rebuttal evidence by the government. These alleged errors all involved action within the discretion of the district judge, and therefore appellant's claims are without merit.

For the foregoing reason we affirm the convictions of both appellants in the district court.

AFFIRMED.

---

**12.** A "drug standard" is a pure quantity of a certain drug used to compare with seized drugs to determine their chemical composition.