UNITED STATES of America,
Plaintiff-Appellee,

v.

James Clifford SETZER, II,
Defendant-Appellant.

No. 80–7335.

United States Court of Appeals,
Fifth Circuit.
Unit B

Aug. 27, 1981.

Mary S. Donovan, Asst. Fed. Public Defender, Atlanta, Ga., for defendant-appellant.

William S. Sutton, Richard H. Dean, Asst. U. S. Attys., Atlanta, Ga., for plaintiff-appellee.

Before JONES, HILL and ANDERSON, Circuit Judges.

JAMES C. HILL, Circuit Judge:

After a nonjury trial, James Clifford Setzer II was adjudged guilty of possessing cocaine hydrocloride with the intent to distribute it and of simply possessing hashish, in violation of 21 U.S.C. §§ 841(a)(1) and 844(a) respectively. None of the facts are disputed; Setzer challenges only the constitutionality of the seizure and search which led to the discovery of the proscribed substances. We affirm the conviction.

Lawsuits springing from the seizure of illegal drugs at airports seem to be in vogue these days. This court has struggled to provide answers to the questions presented by these cases. Unfortunately, but perhaps inevitably, some of the distinctions we have drawn may be difficult to reconcile. One thing is clear: in each case, the facts have played a crucial role, so we recite the facts here in some detail.

## I.

The place: Atlanta's Hartsfield International Airport. The time: shortly after 3:00 p. m. on August 30, 1979. Drug Enforcement Administration Agent Paul Mar-

konni routinely surveyed the passengers arriving from Miami. Setzer was among those deplaning; he carried no hand baggage. Markonni overheard Setzer ask for the gate number of a connecting flight to Dayton, Ohio. Setzer headed toward that gate. Markonni continued to observe the deplaning passengers until the last one passed him, and then he walked quickly to the gate where Setzer was to meet his connecting flight. Markonni watched as Setzer handed his ticket to an airline agent who placed the ticket in a box, indicating that Setzer was probably flying standby. Markonni looked at the ticket, discovered that it was issued in the name James Setzer, that Setzer was flying standby to Dayton, and that Setzer had checked no baggage. By using the airline's reservation computer, Markonni learned that Setzer had changed his flight reservations earlier that morning; he also made note of the telephone number in Miami which Setzer had provided for the airline. Markonni tried that number and reached a person who apparently understood no English and who did not seem to recognize the name James Setzer.

His suspicions aroused, Markonni approached Setzer, who was sitting near the gate. Markonni identified himself as a federal officer and asked Setzer if he could speak with him for a few minutes. Setzer said "Sure," stood up, faced Markonni, and properly identified himself. In response to Markonni's questions about his trip to Miami, Setzer claimed that he had a friend in that city and that he had flown down the previous night to attend a karate demonstration. Markonni later testified that he suspected Setzer's story was a fabrication both because Setzer appeared nervous and because his initial return flight reservation was on an early weekday morning flight.

Markonni then revealed that he was a narcotics officer and that he was looking for drugs passing through the airport. He asked Setzer if he was carrying drugs. Setzer indicated he was not. Markonni asked Setzer if he would mind submitting to a brief search of his person. Setzer replied that he would mind. Markonni then asserted: " 'If you're not carrying any drugs or narcotics, you have nothing to worry about. . . . I can't see why you would mind allowing a search of your person.' " Record, Vol. III, at 35. Setzer responded: " 'I'm not worried.' " He hesitated, and Markonni waited. Setzer then added: " 'Well, I do have something. I have a small piece of hash in my boot. You can have it. I'll give it to you if you want.' " *Id.*

Markonni testified that Setzer was under arrest at that point. He chose not to advise Setzer that he was under arrest in a public area; instead, Markonni told Setzer to accompany him. He said that he would have to take the hashish and any additional drugs Setzer might have with him. He added that he did not believe Setzer had anything to worry about because the government usually did not prosecute for possession of small amounts of drugs.

Markonni and Setzer walked together to an airline lounge. There, Setzer placed his jacket on a chair, sat down, pulled off one of his boots and handed Markonni the hashish. At Markonni's order, Setzer removed his other boot and his socks. Markonni hand frisked Setzer but found no additional drugs. He reached for Setzer's jacket and discovered in one of the pockets a large bag of what proved to be cocaine.

## II.

Our initial task is to determine whether and, if so, when the encounter between Markonni and Setzer implicated the concerns of the fourth amendment. The fourth amendment proscribes unreasonable searches and seizures. It is sometimes obvious whether or not a search has taken place;[1] it is less obvious whether someone

---

1. Setzer, of course, was being searched when he removed his footwear and when Markonni hand frisked him and his jacket.

has been seized[2] and whether a search or a seizure is unreasonable.

The dominant view in this circuit is that the Supreme Court has not yet provided a definitive standard for determining when a fourth amendment seizure has occurred. *See, e. g., United States v. Herbst*, 641 F.2d 1161, 1166–67 (5th Cir. 1981); *United States v. Berry*, 636 F.2d 1075, 1078–79 (5th Cir. 1981); *United States v. Robinson*, 625 F.2d 1211, 1216 (5th Cir. 1980); *cf. United States v. Turner*, 628 F.2d 461, 462–64 (5th Cir. 1980) (suggesting that *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), announced by Justice Stewart and joined only by Justice Rhenquist, provides definitive guidance). Our decision in *United States v. Elmore*, 595 F.2d 1036 (5th Cir. 1979), which we consider binding precedent, does provide a framework for analyzing encounters between law enforcement officers and citizens. In *Elmore*, after interpreting the Supreme Court's *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) opinions, we suggested that there are three types of police/citizen encounters: (1) full scale arrests; (2) restraints of citizens which are less than arrests but which nevertheless trigger fourth amendment scrutiny; and (3) personal intercourse between police and citizens which may be for investigative purposes but which are not restraints on the citizen's liberty and which thus are not encompassed by the fourth amendment.

■ Full scale arrests must be supported by probable cause. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) (detention for custodial interrogation must be supported by probable cause or consent); *United States v. Hill*, 626 F.2d 429 (5th Cir. 1980) (interrogation could no longer be characterized as "brief" when police requested that suspect accompany him to private office; probable cause or consent thus required). In the case before us today, Markonni "arrested" Setzer after Setzer admitted that he was carrying hashish. Although Markonni neither technically arrested Setzer, nor even informed him he was under arrest until after the discovery of the cocaine, the record clearly establishes that Setzer was not free to leave once he admitted that he was engaged in criminal activity. Such a restraint is tantamount to an arrest. *See United States v. Hill*, 626 F.2d at 435; *United States v. Elmore*, 595 F.2d 1041–42. The inculpatory statement itself provided the requisite probable cause to arrest.

■ Furthermore, it was constitutional and proper for Markonni to approach Setzer, identify himself as a federal officer, and to question him. *United States v. Berry*, 636 F.2d 1075, 1079; *United States v. Elmore*, 595 F.2d at 1042. This initial contact required neither probable cause nor articulable suspicion. *Id.*

■ Setzer argues, however, that Markonni's conduct after the initial contact and before Setzer's inculpatory statement violated his fourth amendment rights. Setzer essentially maintains that once he refused to consent to be searched, Markonni was wrong to continue the questioning. If Markonni's conduct did violate Setzer's fourth amendment rights, the inculpatory statement, the subsequent arrest, and the fruits of the search must all be excluded.

Markonni's persistence consisted of a single statement: "If you're not carrying any drugs or narcotics, you have nothing to worry about.... I can't see why you would mind allowing a search of your person." This statement disturbs us. It implies that a person who is not engaged in criminal activity should be willing to relinquish his constitutional rights. That implication is wholly inappropriate. The invoca-

---

**2.** This court has often noted that "the question whether a seizure has occurred often requires a "refined judgment," especially when no force, physical restraint, or blatant show of authority is involved.'" *United States v. Robinson*, 625 F.2d 1211, 1217 n.6 (5th Cir. 1980) (quoting *United States v. Elmore*, 595 F.2d 1036, 1041–42 (5th Cir. 1979) (quoting *United States v. Wylie*, 569 F.2d 62, 68 (D.C.Cir.1977), *cert. denied*, 435 U.S. 944, 98 S.Ct. 1527, 55 L.Ed.2d 542 (1978))).

tion of one's constitutional rights gives rise to no inference that criminal activity is afoot. Nevertheless, while we consider the statement offensive, we do not think Markonni violated Setzer's fourth amendment rights.

We note that Markonni has similarly addressed others while questioning them. In *United States v. Hill*, 626 F.2d at 435, this court observed:

> The record reveals that, at the time Markonni requested Hill to accompany him to the Delta office, Markonni had already briefly interrogated Hill. At that point, Markonni asked Hill if he would consent to a search and Hill told him "not without a search warrant." When Markonni told Hill that he had nothing to fear from a search if he was not carrying drugs, Hill again responded that he would not allow a search without a search warrant. It was only at this point that Markonni requested Hill to accompany him to the Delta office. In our view, when Markonni requested Hill to come with him to the Delta office, the interrogation could no longer be characterized as "brief" or "on-the-spot."

*Id.* (footnote omitted). We believed that it was illegal for Markonni to ask Hill to accompany him, because Markonni did not have the requisite cause to seize Hill and because Hill had twice refused to consent to be searched. Thus we held that the fruits of Markonni's subsequent search of Hill had to be suppressed. The unsupported restraint of Hill, and not just Markonni's questioning, was the constitutionally significant intrusion.

We employed similar reasoning in a case involving an analogous statement by Markonni. In *United States v. Robinson*, 625 F.2d at 1216–17, Robinson alleged that Mar-

konni approached him and " 'said that he was conducting a narcotics investigation *and he had reason to believe that I was carrying narcotics.* ' " *Id.* at 1216 (emphasis in original) (quoting the record). In an attempt to distinguish his case from *Elmore*, Robinson contended "that no reasonable person would feel free to go after being accused by a police officer of carrying narcotics." *Id.* Essentially, Robinson argued that Markonni's accusation elevated the encounter from an initial contact to a constitutionally significant restraint requiring articulable suspicion. We remanded for a factual determination—whether or not Markonni actually made the statement[3] —and noted that "such a statement would, at minimum, be a significant factor in the *Elmore* analysis." *Id.* at 1217 (footnote omitted). Offensive statements, then, whether they are unsupported outright accusations of criminal activity or suggestions that an innocent person would be willing to relinquish constitutional rights, are not irrelevant to the *Elmore* analysis. We believe, however, that Markonni's statement to Setzer, by itself, did not render this encounter unconstitutionally intrusive.

We conclude, then, that Setzer was not seized prior to his making an inculpatory statement. The encounter, up to that point, was a constitutionally permissible police/citizen contact which did not require the support of either probable cause or articulable suspicion. The inculpatory statement itself provided the requisite cause to justify the subsequent seizure and search. Thus, Setzer suffered no violation of his fourth amendment rights.

### III.

Setzer raises two other arguments. First, he contends that his fifth amendment

---

**3.** We remanded in *Robinson* because we had an incomplete factual record. The *Robinson* evidentiary hearing was held prior to our rendering of the *Elmore* decision; consequently, the magistrate did not focus on the initial encounter between Robinson and Markonni. Here, on the other hand, we have a complete factual record. The magistrate did gather the facts relevant to the initial encounter between Setzer and Markonni and concluded, in light of *Elmore*, that no seizure had occurred. (The mag-

istrate said: "At the time of the exchange regarding the consent search, the defendant was not under arrest, nor was he even being detained within the meaning of *Terry v. Ohio*, 392 U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889] (1968). *See Elmore v. United States*, 595 F.2d 1036 (5th Cir. 1979)." Record, Vol. I, at 114 (footnote omitted)). Thus, we are able to make the legal determination on the seizure issue here. *Cf., United States v. Robinson*, 625 F.2d at 1217.

rights were violated because Markonni neither stopped questioning him nor recited the *Miranda*[4] litany of rights to him once he refused to consent to be searched. He argues that *Miranda* dictates that all police activity *stop once a constitutional right has been invoked.* We agree with the Magistrate's analysis:

> There is the temptation to apply the *per se* exclusionary rule of *Miranda* which would delete any confession given during custodial interrogation after a suspect has either shown a desire to remain silent or requested an attorney. Because the interrogation here was non-custodial, the presumption of undue pressure relied upon in *Miranda* to support the *per se* rule is not applicable . . . .

Record, Vol. I, at 114–15. *See generally Beckwith v. United States,* 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1975).

■ Finally, Setzer contends that the search of his jacket was illegal because the jacket was within Markonni's exclusive control and thus a warrant should have been obtained. We believe that it was proper for Markonni to frisk Setzer's jacket under the circumstances of this case; the search itself was valid as incident to a proper seizure and the fact that Setzer had set the jacket on a sofa did not place the jacket outside the proper scope of the search. *See generally Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1968).

AFFIRMED.

**4.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).