**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jesse Lee SANFORD,**
**Defendant-Appellant.**

No. 80–7929.

United States Court of Appeals,
Fifth Circuit.*
Unit B

Oct. 5, 1981.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

J. Richard Young, Martin & Young, Mary J. Wilkes, Atlanta, Ga., for defendant-appellant.

Janet F. King, Craig A. Gillen, Asst. U. S. Attys., Atlanta, Ga., for plaintiff-appellee.

Before RONEY, VANCE and RANDALL, Circuit Judges.

VANCE, Circuit Judge:

Jesse Lee Sanford was convicted of possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1). He was sentenced to imprisonment for six years followed by three years special mandatory parole. On appeal Sanford urges that the district court erred in denying his motion to suppress heroin obtained during a search of his person at the Atlanta Hartsfield International Airport. The district court's denial of Sanford's motion was based on the report and recommendation of the United States Magistrate who conducted the evidentiary hearing.

The evidence before the magistrate was contradictory. The magistrate believed the government's testimony and did not believe that of defendant. That credibility choice, as adopted by the district judge, is, of course, binding and establishes the basis on which this court reviews the challenged order.

Agent Paul Markonni of the Drug Enforcement Administration (DEA) and Detective James Burkhalter of the Atlanta police were the officers involved in the search and arrest of Sanford. Markonni has worked for seven years with DEA airport details and has participated in more than 400 arrests of couriers carrying drugs through airports.

On April 29, 1980, Markonni and Burkhalter were watching passengers disembark from Delta Flight 1088 arriving from Dallas and Los Angeles. They were watching that particular flight because it is a heavily traveled connection flight from Los Angeles, which is the main heroin distribution center in the United States. In addition, Dallas is a major transshipment point for drugs smuggled into the United States from Mexico. Markonni was standing behind the gate agent and observing persons who approached the agent and asked questions about connecting flights. He saw that the ticket Sanford presented to the agent had no baggage claim attached and that Sanford was carrying only a small gym bag. Although Sanford's trip could have been made on a single ticket, Markonni observed that he had separate tickets and that they apparently had been purchased with cash. This combination of circumstances caused Markonni to investigate further by checking on Sanford through the Delta computer. Among the items of information was a Dallas telephone number given by Sanford as the number where he could be contacted. When Markonni called the number the person who answered denied knowing anyone named Jesse Sanford.

Meanwhile Sanford spotted Burkhalter, apparently recognized him as an officer and immediately appeared nervous and concerned. At the time Markonni returned to Burkhalter Sanford was making a telephone call. He appeared to notice both officers at that time and became even more nervous, continually looking back over his shoulder directly at the two officers during the telephone conversation.

When Sanford finished his call Markonni approached him, identified himself and asked if he might speak with him for a few minutes. Sanford agreed. Markonni requested to see Sanford's tickets. When Sanford opened his bag and produced the tickets Markonni noticed that there was no clothing in the bag. Markonni then asked Sanford to consent to a search of his person and bag. Sanford agreed and began to remove items from his bag. Markonni then advised Sanford that he could be searched

either at the gate area or in a private office. When asked if he would prefer to go to the private office Sanford answered in the affirmative.

Markonni, Burkhalter and Sanford walked to a nearby Delta office where Markonni read Sanford his rights from a rights card.[1] Sanford stated that he understood his rights and still agreed to a search. Markonni then began to pat down Sanford, and in his lower abdominal area found a plastic bag containing heroin.

After holding an evidentiary hearing the magistrate found there was no seizure of Sanford's person and that even if there had been a seizure Sanford's free and voluntary consent purged any taint of illegal detention. As did the appellant in *United States v. Robinson*, 625 F.2d 1211 (5th Cir. 1980), Sanford contends that (1) his initial stop constituted a seizure; (2) there was not sufficient reasonable suspicion to justify the seizure; (3) he did not voluntarily consent to the search; and (4) even if he did consent, such consent does not purge the taint of his illegal seizure. Because we disagree with Sanford's first three contentions it is not necessary that we reach the fourth.

(1)

The seizure issue involves a facet of the law that has developed in the wake of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1864, 20 L.Ed.2d 889 (1968). The situation now before us was dealt with in Justice Stewart's opinion in *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Speaking only for himself and Justice Rehnquist, he wrote:

> The Fourth Amendment's requirement that searches and seizures be founded upon an objective justification, governs all seizures of the person, "including seizures that involve only a brief detention short of traditional arrest. *Davis v. Mississippi*, 394 U.S. 721 [89 S.Ct. 1394, 22 L.Ed.2d 676] (1969); *Terry v. Ohio*, 392 U.S. 1, 16–19 [88 S.Ct. 1868, 1877–79, 20

L.Ed.2d 889] (1968)." *United States v. Brignoni-Ponce*, 422 U.S. [873], at 878 [95 S.Ct. 2574, 2578, 45 L.Ed.2d 607]. Accordingly, if the respondent was "seized" when the DEA agents approached her on the concourse and asked questions of her, the agents' conduct in doing so was constitutional only if they reasonably suspected the respondent of wrongdoing. But "[o]bviously, not all personal intercourse between policemen and citizens involves 'seizure' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S., at 19, n.16 [88 S.Ct., at 1879 n.16].

*Id.* at 551–52, 100 S.Ct. at 1875–76. (footnote omitted). Of particular relevance is the test which Justice Stewart formulated:

> We conclude that a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.

*Id.* at 554, 100 S.Ct. at 1877 (footnote omitted).

Central to Sanford's first position is his argument that by their very nature all investigatory stops by DEA agents working airport drug details are *Terry* type stops requiring reasonable suspicion. He argues with considerable force that no reasonable person would have felt free to go after learning the identity of the officers, learning that he was suspected of carrying narcotics and being invited to submit to a search. He undertakes to distinguish the facts in this case from those in *United States v. Elmore*, 595 F.2d 1036 (5th Cir. 1979), *cert. denied*, 447 U.S. 910, 100 S.Ct. 2998, 64 L.Ed.2d 861 (1980), but ultimately contends that *Elmore* conflicts with constitutional precedent on the seizure issue.

---

1. "Agent Markonni stated to [Sanford] that he had a right to refuse to allow a search to be made of his person or personal property, that he had the right to consult with an attorney before deciding whether he wished to consent to a search and that if he consented and if any illegal object was found that it could be used against him." Record on Appeal, vol. 1, at 324–25.

■ Our cases make it clear, however, that *Elmore* continues to control in this circuit. *E. g., United States v. Setzer*, 654 F.2d 354, 357 (5th Cir. 1981); *United States v. Berry*, 636 F.2d 1075, 1078 (5th Cir. 1981); *United States v. Berd*, 634 F.2d 979, 984 & n.6 (5th Cir. 1981); *United States v. Robinson*, 625 F.2d at 1215. The test implicit in *Elmore* and explicit in *Robinson, Berd* and *Berry* is the same as that stated by Justice Stewart in *Mendenhall* : whether a reasonable person would have believed that he was free to leave.

■ In this case there was no physical contact between the officers and Sanford. No weapon or force was used or offered. Markonni issued no command, nor did he accuse Sanford of carrying narcotics. The words addressed to Sanford were in the form of a request and did not imply that Sanford was not free to leave. In the testimony credited by the magistrate there is no indication of any impermissibly intimidating circumstances.

The magistrate applied the correct legal standard, that set forth in the *Elmore* line of cases, in his determination that the encounter between Markonni and Sanford did not amount to a seizure. The record supports such a holding.

(2)

■ Assuming arguendo that there were a seizure at the time Sanford was first approached by Markonni, we next consider whether the credited testimony supports a finding of reasonable suspicion of criminal activity. The relevant factors, those known to the officer at the moment of the seizure, *e. g., Terry*, 392 U.S. at 21–22, 88 S.Ct. at 1879–81, include several that are common to other recent cases arising in the Atlanta airport. (1) Sanford came from a heroin distribution center on a flight that stopped in a transshipment city. (2) His itinerary appeared unusual because he had separate tickets for a continuing flight. (3) His initial reservation was made only a short time before the flight's scheduled time of departure and was then cancelled. (4) The ticket he was carrying was apparently paid for in cash. (5) He checked no baggage. (6) He carried only a small gym bag that was too small to hold a change of outer clothing. (7) He made a telephone call immediately upon deplaning.[2] (8) He gave a fictitious call-back telephone number.

In addition to these factors Sanford's behavior was particularly significant. After he noticed Markonni and Burkhalter he repeatedly stared at them over his shoulder. He appeared extremely nervous and concerned, and his hands were shaking. He exhibited behavior similar to that seen by Markonni in excess of a hundred times when observing persons in similar situations where narcotics have been involved.

Sanford argues that observation of these drug courier profile characteristics,[3] with

---

2. At the hearing before the lower federal court Markonni indicated that he did not overhear Sanford's telephone conversation and that he was not aware of anything suspicious about the conversation. Record on Appeal, vol. 2, at 57.

3. The profile, "an informally compiled abstract of characteristics thought typical of persons carrying illicit drugs," *United States v. Mendenhall*, 446 U.S. 544, 547 n.1, 100 S.Ct. 1870, 1873 n.1, 64 L.Ed.2d 497 (1980), is explained in *United States v. Ballard*, 573 F.2d 913, 914 (5th Cir. 1978), and the Markonni profile is reported in *United States v. Elmore*, 595 F.2d 1036, 1039 n.3 (5th Cir. 1979), as follows:

The seven primary characteristics are: (1) arrival from or departure to an identified source city; (2) carrying little or no luggage, or large quantities of empty suitcases; (3)

unusual itinerary, such as a rapid turnaround time for a very lengthy airplane trip; (4) use of an alias; (5) carrying unusually large amounts of currency in the many thousands of dollars, usually on their person, in briefcases or bags; (6) purchasing airline tickets with a large amount of small denomination currency; and (7) unusual nervousness beyond that ordinarily exhibited by passengers.

The secondary characteristics are (1) the almost exclusive use of public transportation, particularly taxicabs, in departing from the airport; (2) immediately making a telephone call after deplaning; (3) leaving a false or fictitious call-back telephone number with the airline being utilized; and (4) excessively frequent travel to source or distribution cities.

nothing more, does not support a finding of reasonable suspicion. In support he cites *Reid v. Georgia*, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980), and *Elmore*, as well as cases from the second and sixth circuits. The facts in the present case, however, can be easily distinguished from the situation in *Reid*, in which the suspect manifested only a few characteristics that might well be shared with a large and innocent segment of the population.[4] Though dicta in *Elmore* stating that "it has been held that the [Drug Courier] Profile is an insufficient basis, *without more*, on which to bottom a lawful investigative stop," *Elmore*, 595 F.2d at 1039 (emphasis in original), seems superficially to support Sanford's position, the precedent in this circuit does not support his conclusion. The cases relied on by the *Elmore* court indicate only that reasonable suspicion does not automatically arise where the characteristics of a person under surveillance correspond to some of the profile characteristics. In any event, Markonni and Burkhalter did not approach Sanford solely because he exhibited a few of the profile characteristics. His exhibition of most of the characteristics coupled with Sanford's unusually nervous behavior was the basis for their suspicion.

Inclusion of some of those characteristics within the "informally compiled" drug courier profile does not mean that they cannot be considered significant when properly evaluated. Such a rule would be wholly inconsistent with our holdings in *Berd* and *Robinson*. In addition, it is important that we are not considering the mere mechanical application of an arbitrary compilation of characteristics. Evaluation of Sanford's characteristics was made by an acknowledged expert with both training and experience in the field of narcotics control. "[I]t is important to recall that a trained law enforcement agent may be 'able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer.'" *United States v. Men-*

denhall, 446 U.S. at 563, 100 S.Ct. at 1882 (1980) (Powell, J., concurring) (citing *Brown v. Texas*, 443 U.S. 47, 52 n.2, 99 S.Ct. 2637, 2641 n.2, 61 L.Ed.2d 357 (1979)).

As this court has previously observed, we would be greatly concerned about a practice of routinely stopping and questioning citizens traveling through airports. At the same time, we are appreciative of the great public interest involved in preventing drug traffic and of the effectiveness of specially trained agents acting pursuant to well planned and effective programs such as those employed by the agents in this case. The facts here support the conclusion that Markonni possessed reasonable and articulable suspicion of criminal activity.

(3)

■ The unequivocal evidence given by the law enforcement officers established that Sanford was correctly advised as to his rights and that he freely and voluntarily consented to the search of his person and his bag. The magistrate's finding to this effect is amply supported by the record. Sanford argues that his consent was necessarily the product of psychological coercion. However interesting it might be to reflect on the ramifications of this contention, it is sufficient for our present purpose that the magistrate's contrary finding is not clearly erroneous.

Because the ruling of the district court on the motion to suppress was not erroneous, the conviction of Sanford must be affirmed.

AFFIRMED.

RANDALL, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority opinion insofar as it affirms the lower court decision on the basis that the initial stop of the defendant by DEA agents was not a seizure—a *Terry* stop—requiring reasonable suspicion. I respectfully dissent from the court's unnecessarily addressing and, I believe, wrongly deciding the question whether there was reasonable suspicion to effect a *Terry* stop.

---

4. The suspect in *Reid* arrived from a source city in the early morning, tried to conceal the fact that he was traveling with a companion, and had no luggage other than a shoulder bag. *Reid v. Georgia*, 448 U.S. 438, 440–41, 100 S.Ct. 2752, 2753–54, 65 L.Ed.2d 890 (1980).

The law in this Circuit is clear that when a DEA agent approaches a deplaning passenger in an airport and engages him in conversation relating to identity and destination, this police-citizen contact does not rise to the level of a seizure requiring reasonable suspicion. *United States v. Elmore*, 595 F.2d 1036 (5th Cir. 1979). The encounter before us seems indistinguishable from that in *Elmore* and in numerous cases subsequent to it where no seizure was found. *E. g., United States v. Setzer*, 654 F.2d 354 (5th Cir. 1981); *United States v. Williams*, 647 F.2d 588 (5th Cir. 1981). Although the court's decision to rehear *United States v. Berry* and *United States v. Zabish*, 649 F.2d 385 (5th Cir. 1981),[1] en banc may indicate that *Elmore* is, at the moment, something of an endangered species, it is still controlling law in this Circuit. Cases are being decided on the basis of it (*e.g., Setzer*) and it is the only precedent necessary to affirm the decision in this case. The court inadvisedly answers the question whether there was sufficient reasonable suspicion of criminal activity to support a seizure that admittedly did not occur.

A review of cases in which this court has examined airport stops by DEA agents fails to disclose any where the court held that suspicion of an airline passenger based solely on that passenger's having some (or all) of the characteristics contained in the "drug courier's profile" constituted reasonable suspicion to support a seizure of the person. This Court has only affirmed seizures when there was more than the profile as a basis for the seizure. *See e. g., United States v. Berd*, 634 F.2d 979 (5th Cir. 1981).[2] Recently the Court, in dicta, indicated that a seizure based solely on the profile would be unconstitutional. *United States v. Herbst*, 641 F.2d 1161, 1167 n. 8 (5th Cir. 1981). Similarly, the United States Supreme Court, in the only decision in which it has reached the question of what constitutes reasonable suspicion, found possession by an airline passenger of several characteristics of the profile wholly insufficient to form reasonable suspicion.[3] *Reid v. Georgia*, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980).

The majority contends that our decisions in *U. S. v. Berd, supra*, and *U. S. v. Robinson, supra*, allow some of the profile characteristics to be "considered significant when properly evaluated," thus constituting the basis for reasonable suspicion. These two decisions do not support the majority position. In *Berd*, two passengers were stopped for questioning at the Atlanta airport based on possession of the profile characteristics. The court found that the seizures occurred, not at the time of the initial stop (citing *Elmore*), but at a later time when the passengers had been detained and denied

---

1. These cases were consolidated on appeal. *United States v. Berry*, 636 F.2d 1075, *petition for rehearing granted*, 649 F.2d 385 (5th Cir. 1981). There were several issues addressed by the court in its initial decision, including whether the initial contacts between the DEA agent and Berry and Zabish were *Terry* stops, whether there was a subsequent seizure based on reasonable suspicion because of additional information obtained by the agent, and whether there had been evidentia．y errors in the exclusion and inclusion of evidence at trial. The court held that the initial contact was not a *Terry* stop, that the subsequent seizure was based on reasonable suspicion and that no evidentiary errors had been made. Additionally, the court refrained from addressing whether Berry and Zabish had consented to the search, having held that the seizure prior to the search was proper. Any of these holdings could, of course, be reconsidered en banc.

2. The Court of Appeals for the Sixth Circuit has likewise determined that the "profile" does not constitute a basis for reasonable suspicion. *United States v. Jefferson*, 650 F.2d 854 (6th Cir. 1981).

3. Judge Thomas Clark, reviewing *U. S. v. Mendenhall, supra*, in an "airport stop" case, indicated he thought that decision implicitly allowed the profile to be the basis of reasonable suspicion. *United States v. Turner*, 628 F.2d 461 (5th Cir. 1980). *Mendenhall*, however, was decided on two different rationales (Justices Rehnquist and Stewart finding that there was no seizure, while Justices Powell, Blackmun and Berger found a seizure based on reasonable suspicion). Thus *Mendenhall* is no precedent for the proposition alluded to in *Turner*. Nor was *Turner* cited by the panel here. *See generally, U. S. v．Robinson, supra* at 1215.

**348**

the freedom to leave. *Id.* at 985. The court found that the later seizure was reasonable based on the agents subsequent knowledge of additional facts garnered in their questioning of the two passengers rather than only on the profile characteristics on which the initial contact was based. *Id.* at 986. The Court stated: "We conclude as a matter of law that the additional information acquired by Agent Markonni immediately prior to his seizure of appellants gave the agent reasonable grounds to suspect that appellants were engaged in criminal activity." *Id. Berd* in no way supports the proposition that the profile is sufficient. Implicitly, it stands for the proposition that the profile is insufficient as a basis for reasonable suspicion.

In *Robinson*, this court *remanded* to the district court for a determination if, and when, a seizure occurred, *U. S. v. Robinson, supra* at 1215–17, and thus whether facts existed at that time to support reasonable suspicion. *Id.* at 1217. The court did not approve the drug courier's profile as a basis for reasonable suspicion.

Moreover, the panel erroneously indicates that Sanford's "unusually nervous behavior" is a factor distinct from, and thus additional to, the drug profile characteristics and attempts to "couple" nervousness with the profile as a basis for reasonable suspicion. 658 F.2d 347. "Unusual nervousness" is not an additional factor to be considered along with the drug courier's profile to establish reasonable suspicion but is only a part of that profile.[4] *Ante,* at 658 F.2d 347, n.3. The court, despite attempts to create something more, can cite only profile characteristics as a basis for this seizure. When a seizure has been upheld, it has always been because there was more than the "drug courier profile" as the basis for reasonable suspicion. To depart from that standard flies in the face of prior decisions of this Court.

4. Nervousness may, in fact, be "entirely consistent with innocent behavior, especially at an airport where a traveller may be anticipating a long-awaited rendevous with friends or fami-

This court's unnecessary determination that reasonable suspicion sufficient to justify a *Terry* stop existed, which is unlikely to be scrutinized because of the existence of a correct basis for the decision (that there was no stop), is ill conceived, and regrettably engrafts erroneous but now binding precedent into the law in this circuit. *Cf. U. S. v. Williams,* 622 F.2d 830, 851 (5th Cir. 1980) (Rubin, J., specially concurring).

ly." *United States v. Andrews,* 600 F.2d 563 (6th Cir. 1979).

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.