**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Ronald Stancil FREEZE,**
**Defendant-Appellant.**

**No. 82–2463**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

May 31, 1983.

Michael Ramsey, Houston, Tex., for defendant-appellant.

James R. Gough, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before GEE, RANDALL and TATE, Circuit Judges.

RANDALL, Circuit Judge.

The defendant, Ronald Stancil Freeze, claims on appeal that his conviction of possession of marijuana with intent to distribute should be set aside: 1) because the evidence was insufficient to support his conviction; and 2) because he was denied effective assistance of counsel at trial. For the reasons set forth below, we affirm the defendant's conviction without prejudice to his right to pursue his ineffective assistance of counsel claim under 28 U.S.C. § 2255.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

At approximately 9:00 a.m. on September 22, 1981, United States Air Customs reported that a Piper Aztec airplane, with the registration number N5905Y, had entered Mexican airspace. On September 23, 1981, Texas Department of Public Safety officials found the abandoned airplane in Bee County, Texas. The plane contained approximately 761 pounds of marijuana.

The officers tried unsuccessfully to take fingerprints from the inside of the plane, but they did obtain prints from two items found in the aircraft—an aeronautical map of the San Antonio area and a yellow sheet of paper that had navigational coordinates written on it. The navigational coordinates led investigators to a homemade airstrip on a ranch near the abandoned plane. The fingerprints turned out to be the defendant's. The defendant was subsequently indicted on one count of knowingly and intentionally possessing approximately 761 pounds of marijuana with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1).

The defendant explained at trial that he was an airplane broker. He testified that about three weeks before the plane was found abandoned, he had taken it to Nayak Aviation in San Antonio for repairs to the fuel injection system, propeller and door. The defendant claimed that the plane had been purchased more than a year before in California by the owner, "Mr. Andrews." A Nueces County Sheriff's department employee testified, however, that the defendant's and Mr. Andrews' signatures had been made by the same person.

The defendant testified that he had met Harold Butts at the plane at around 8:30 a.m. on September 22. Butts had purchased planes from the defendant in the past and the defendant claimed that Butts had informed him that Mr. Andrews wanted Butts to pick up the plane. The defendant apparently then permitted Butts to take the plane and went into the Nayak Aviation comptroller's office to pay the repair bills.

The defendant claimed that after he left the comptroller's office, he returned to Austin, where he had dinner with his daughter. The daughter corroborated his story, although she was vague about where she had been with her father and admitted that he had left her at various times during the day to take care of some errands.

The government called as witnesses two Nayak Aviation employees, who testified that the defendant had given them conflicting stories about the plane's destination. Snell, the service manager, stated that the defendant had telephoned him on September 21, 1981, to urge him to repair the plane quickly because the defendant needed it to take a man to Tulsa, Oklahoma. When Snell returned to work the next morning at approximately 8:00 a.m., the plane was still at the station. Nayak comptroller Hartwig recalled that the defendant had said that he was taking the plane to Houston or Dallas.[1]

---

1. The defendant denied telling Snell that he was going to Tulsa or telling Hartwig that he was going to Houston or Dallas.

The Nayak employees partially corroborated the defendant's testimony about his presence at Nayak Aviation on September 22. Snell had observed two men standing by the plane but had been unable to identify them. Hartwig remembered the defendant's visit but was unable to pinpoint the exact time of their conversation. He estimated that it was some time before 11:30 a.m. because he had taken the defendant's $900 cash payment to the bank at noon. No one at Nayak actually saw the plane take off.

Two government officials testified at the trial about conversations that they had had with the defendant. United States Customs Agent Deatrick had contacted the defendant in November, 1981, about the abandoned airplane. The defendant allegedly told him that he had left the plane at Nayak to be sold. The defendant testified, however, that he had told Deatrick that the plane had already been sold and left at Nayak. The Nayak employees stated that they had not sold airplanes on the premises for five years.

After the defendant had been indicted, he met with Officer Hatcher in the presence of the defendant's attorney. The defendant informed Hatcher that he had brought the plane to Texas to be looked at by prospective buyers. Hatcher testified that the defendant admitted that he had given the plane to Butts to fly and that he had had "an idea" that Butts was going to use the aircraft to transport marijuana. At trial, the defendant attempted to explain this last statement as an idea that had occurred to him in hindsight, after he was made aware that the plane was found with a substantial quantity of marijuana inside it.

Defense counsel did not make a motion for a judgment of acquittal at the close of all of the evidence. The judge instructed the jury that it could convict the defendant if it found him guilty of possession or of aiding and abetting.[2] The defendant was found guilty and sentenced to five years in prison and a five-year special parole term. He filed a timely notice of appeal.

2. 18 U.S.C. § 2.

## II. SUFFICIENCY OF THE EVIDENCE.

The defendant contends that the government did not produce sufficient evidence of possession of the marijuana to support his conviction. Because he did not move for a judgment of acquittal at the close of the evidence, his conviction is reviewed solely for "manifest miscarriage of justice." *United States v. Mattox,* 689 F.2d 531, 532 (5th Cir.1982); *United States v. Doe,* 664 F.2d 546, 548 (5th Cir.1981). In reviewing a challenge to the sufficiency of the evidence supporting a criminal conviction, we must consider the evidence in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), and we must affirm as long as "a reasonable trier of fact could [have found] that the evidence establishe[d] guilt beyond a reasonable doubt." *United States v. Bell,* 678 F.2d 547, 549 & n. 3 (5th Cir.) (en banc), *cert. granted on other grounds,* —— U.S. ——, 103 S.Ct. 444, 74 L.Ed.2d 600 (1982).

To convict someone of possession of contraband with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1), the government must prove beyond a reasonable doubt 1) the defendant's possession of the illegal substance, 2) knowledge, and 3) intent to distribute. The requisite intent may be inferred from the quantity of contraband involved, *United States v. Vergara,* 687 F.2d 57, 62 (5th Cir.1983), and possession may be actual or constructive. *Id.; see also United States v. Dreyfus-de-Campos,* 698 F.2d 227, 229 (5th Cir.1983). Constructive possession may be inferred from the ownership, or the exercise of dominion or control of the vehicle in which the contraband is concealed. *Dreyfus-de-Campos, supra; United States v. Niver,* 689 F.2d 520, 529 (5th Cir.1982).

There was evidence produced at trial from which the jury could have inferred that the defendant owned or exercised control over the airplane. The Nueces County

Sheriff's department employee testified that, in his opinion, purported owner Andrews' and the defendant's signatures were made by the same person. If the jury believed the county employee's testimony, then it could have reasonably concluded that the defendant owned the airplane. The defendant himself admitted that he had exercised control over the plane in that he had flown it from California to Texas. *See Niver, supra* (pilot exercised control of aircraft).

■ Ownership or control without knowledge, however, will not support a conviction for possession of contraband. *United States v. Gonzalez,* 703 F.2d 807 (5th Cir. 1983). In *Gonzalez,* we reversed the defendant's conspiracy and possession convictions where three hours had intervened between the defendant's presence in his empty van and its abandonment when it was loaded with drugs. We were convinced that "too many innocent scenarios jibe[d] with the sparse record facts connecting Gonzalez to the drug," to permit a jury properly to conclude that the defendant was guilty beyond a reasonable doubt. *Id.* at 808.

There is more evidence in this case connecting the defendant to the marijuana than there was in *Gonzalez.* The defendant's fingerprints were found on a sheet of paper that had coordinates written on it leading to a homemade airstrip near the abandoned plane. The coordinates were not published. While the defendant claimed that he had used the coordinates to test the plane's radio equipment during an earlier flight, a pilot, who testified for the government, effectively refuted the defendant's story. The pilot explained that specific coordinates are published for testing radio equipment and a test relying on unpublished coordinates would not have been useful. 4 Record at 45. The jury could reason-

ably have inferred that the defendant's use of these coordinates and their connection to the probable plane landing site for Butts' cargo was more than mere coincidence.

A number of witnesses also testified that the defendant gave conflicting stories about the plane's destination: he told Snell that he was planning to fly to Oklahoma, but he told Hartwig that he was bound for Houston or Dallas. If the defendant had merely intended to hand the plane over to its owner, there would have been no reason to make up a story about where he was going.[3]

■ The government has suggested throughout these proceedings that the defendant piloted the plane while it was loaded with the marijuana. Under the government's theory, since the defendant would have had dominion over the airplane at the time that it contained the contraband, *Gonzalez* would not apply. The problem with this hypothesis is that Hartwig testified that he saw the defendant between 10:30 a.m. and 11:30 a.m. in San Antonio, and the defendant placed himself at the Nayak station at approximately 8:30 a.m.,[4] but the plane was sighted in Mexican airspace around 9:00 a.m. The defendant would have had some difficulty flying from San Antonio to Mexico, picking up over 700 pounds of marijuana, crash-landing near Victoria and returning to San Antonio by 11:30 a.m. We need not decide, however, whether there was sufficient evidence of control of the plane while it was loaded with contraband because we conclude that there was ample evidence to support the defendant's conviction of aiding and abetting the possession of the marijuana with intent to distribute it in violation of 18 U.S.C. § 2.

■ While the defendant was only indicted for possession, the trial court instructed the jury that it could convict him of possession if it found him guilty of aid-

---

**3.** In *Gonzalez,* we noted that knowledge that the van had been found loaded with contraband supplied the motive for the defendant's claim that he had been elsewhere. Here, the defendant gave inconsistent stories before any contraband had been discovered.

**4.** Snell's testimony tended to corroborate this portion of the defendant's testimony in that he remembered seeing two men by the plane between 8:00 and 8:30 a.m., although he could not identify either of them.

ing and abetting.[5] A defendant "who has been indicted as a principal may be convicted on evidence showing that he has merely aided and abetted the commission of the offense." *United States v. Longoria,* 569 F.2d 422, 424 (5th Cir.1978) (quoting *United States v. Bullock,* 451 F.2d 884, 888 (5th Cir.1971)). Aiding and abetting occurs when the defendant "willfully associate[s] himself with the criminal venture and willfully participate[s] in it as he would in something he wished to bring about." *United States v. Pozos,* 697 F.2d 1238, 1242 (5th Cir.1983) (quoting *United States v. Fischel,* 686 F.2d 1082, 1087 (5th Cir.1982)). To prove association, there must be evidence that the defendant "shared the criminal intent with the principal;" to prove participation, there must be "evidence that the defendant committed some overt act designed to aid in the success of the criminal venture." *United States v. Phillips,* 664 F.2d 971, 1010 (5th Cir.1981), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982); *Longoria, supra,* 569 F.2d at 425.

Agent Hatcher's testimony at trial, together with the evidence previously discussed, was sufficient to support the defendant's conviction as an aider and abettor. Hatcher stated that the defendant had informed him that "he had an idea that the aircraft was going to be used to transport marijuana." 3 Record at 61. On cross-examination, defense counsel tried to get Hatcher to concede that the defendant's statement had been made as a reflection, in hindsight, on Butts' plans for the plane, but Hatcher insisted that such was not the case:

Q. Mr. Hatcher, at the time that you talked to Mr. Freeze approximately two weeks ago, he had already been indicted for transporting marijuana, had he not?

A. Yes, sir, he had.

Q. And he was already made aware by that time that the airplane had crashed in Bee County and it had had marijuana on board the aircraft.
Right?

A. I am sure he had.

Q. And he talked to you in my office, did he not?

A. That's correct.

Q. Now, wouldn't it be fair to say that in response to a discussion in the office, he said that, sure, he may have had an idea that Mr. Butts was going to use the airplane to transport marijuana?

A. To my recollection, he said that he had an idea that Mr. Butts was going to transport marijuana.

Q. That was in response to an assertion or question by you or they were to Mr. Buckley and another Texas state pa-

---

**5.** The court instructed the jury:

The guilt of an accused in a criminal case may be established without proof that he personally did every act constituting the offense that was charged.

The law recognizes that ordinarily anything a person can do for himself may also be accomplished by him through the direction of another person as his agent or by acting in concert with or under the direction of another person or persons in a joint effort or enterprise.

So, if the acts or conduct of an agent, employee or other associate of the defendant are willfully directed or authorized by him or if the defendant aids and abets another person by willfully joining together with that person in the commission of a crime, then the law holds that defendant responsible for the acts and conduct of the other persons just as though he had committed the acts or engaged in such conduct himself.

Notice, however, that before any defendant may be held criminally responsible for the acts of others, it is necessary that the accused willfully associate himself and this way the criminal venture and willfully participate in it as he would in something he wishes to bring about, that is to say that he willfully seeks by some act or omission of his to make the criminal venture succeed.

Of course, mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that a defendant either directed or aided and abetted the crime unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator. In other words, you may not find any defendant guilty unless you find beyond a reasonable doubt that every element of the offense as defined in these instructions was committed by some person or persons that the defendant willfully participated within its commission.

trolman that was in the office, was it not, Mr. Hatcher?

A. Sergeant Mike Scott.

Q. Sergeant Scott.

That was in response to an assertion or question by one of you three to Mr. Freeze at that time, was it not?

A. Yes, sir.

Q. So, it wasn't a volunteered statement. It was sort of like: he had marijuana. Didn't you know he was going to have marijuana.

And then he said, well, I might have had an idea he was going to use it to transport marijuana.

Wasn't that how it came about?

A. No, sir. To my recollection, he was asked: Did you know what the aircraft was going to be used for.

And his statement was, well, I had a feeling it might have been going to [be] used to transport marijuana.

*Id.* at 63–64. While the defendant contradicted Hatcher's recollection of the conversation, the jury was entitled to believe Hatcher's version of the event.[6]

Hatcher's testimony indicates that the defendant gave the plane to Butts with the knowledge that Butts was going to use it to transport contraband. By knowingly providing the means to transport the marijuana, the defendant participated in the illegal venture. In addition, while the defendant may not have been the pilot who tried to land the plane and its illicit cargo at the spot represented by the coordinates on the yellow piece of paper, the jury could reasonably have concluded that the defendant placed that paper in the cockpit to guide the pilot to his final destination.

■ We hold that there was sufficient evidence of the defendant's willful and knowing facilitation of the possession of the marijuana to support his conviction. The jury was entitled to infer the defendant's shared intent to distribute the marijuana

from the evidence that he had facilitated the possession of 761 pounds of it. *See Vergara, supra* (intent to distribute may be inferred from the size of the cache); *United States v. Cortez,* 521 F.2d 1, 4 (5th Cir.1975) (affirming conviction of conspiracy to import and to possess with intent to distribute and noting that it is "virtually impossible for mere mortals to consume 300 pounds of marijuana, personally, within a reasonable span of time"). Certainly, the defendant's conviction on the basis of the evidence produced at trial has not resulted in a manifest miscarriage of justice. *Mattox, supra.*

## III. INEFFECTIVE ASSISTANCE OF COUNSEL.

The defendant maintains that his trial counsel was ineffective because he: 1) failed to move for a judgment of acquittal at the close of the evidence; 2) did not move to suppress the evidence or the defendant's post-arrest statements; 3) did not move to have the witnesses excluded from the courtroom until the court mentioned that no one had invoked the rule; 4) did not object to witness testimony about conversations with the defendant; and 5) did not properly object to the aiding and abetting instruction. While the defendant mentioned his dissatisfaction with counsel in a letter mailed to the trial court before his sentencing hearing, the court did not hold a hearing on the defendant's claim.

■ The general rule in this circuit is that a claim of inadequate representation cannot be determined on direct appeal when the claim has not been raised before the district court. Only when the record is sufficiently developed with respect to such a claim, will we determine the merits of the claim. *United States v. Phillips,* 664 F.2d 971, 1040 (5th Cir.1981), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982) (citing *United States v. Brown,* 591 F.2d 307, 310 (5th Cir.), *cert. denied,* 442

---

**6.** We note that there was extensive evidence undermining the defendant's credibility. Besides the testimony that the defendant had given different people different stories, the government introduced evidence of a prior drug conviction to impeach the defendant's credibility. The court refused, however, to permit the government to use this evidence to demonstrate the defendant's motive or intent under Fed.R.Evid. 404(b).

U.S. 913, 99 S.Ct. 2831, 61 L.Ed.2d 280 (1979)). In *Phillips,* as in the case before us, the defendant had written a letter to the trial judge in which he expressed dissatisfaction with his counsel's performance at trial. In *Phillips,* the trial court questioned the defendant's lawyer with respect to each of the allegations raised, and concluded that defense counsel's representation had been adequate. *Id.* at 1040. Here, the trial court summarily dismissed the defendant's complaint with the comment: "Well, it may surprise you to know that I do not believe a mutual observer, as I was, would arrive at that same conclusion [that Mr. Buck did not represent the defendant well] or does arrive at the same conclusion." 5 Record at 8.

While we might be able to determine, on the basis of the trial record, whether the defendant had been deprived of effective assistance of counsel with regard to the failure to make a motion for judgment of acquittal or an objection to the aiding and abetting instruction, *see, e.g., United States v. Whitley,* 670 F.2d 617, 621 (5th Cir.1982) (failure to request a *James* hearing not a mistake of constitutional proportion in light of adequacy of evidence separate and apart from coconspirators' testimony of defendant's involvement in conspiracy), we can only speculate about why defense counsel made no motions to suppress or objections to the evidence. Accordingly, we decline to reach the merits of the defendant's ineffective assistance claim, and we affirm his conviction without prejudice to his right to raise the issue of ineffective assistance of counsel in a proper proceeding pursuant to 28 U.S.C. § 2255. *See United States v. Rodriguez,* 582 F.2d 1015, 1016 (5th Cir.1978).

AFFIRMED.