UNITED STATES of America, Plaintiff-Appellee,

v.

Tomas MALDONADO, Defendant-Appellant.

No. 83–2710
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

June 18, 1984.

---

Roland E. Dahlin, II, Federal Public Defender, Thomas S. Berg, Asst. Federal Public Defender, Houston, Tex., for defendant-appellant.

Daniel K. Hedges, U.S. Atty., James R. Gough, Susan L. Yarbrough, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before GARWOOD, HIGGINBOTHAM, and DAVIS, Circuit Judges.

GARWOOD, Circuit Judge:

Defendant Tomas Maldonado appeals the district court's affirmance of his misdemeanor conviction for simple possession of heroin. 21 U.S.C. § 844. He challenges both the denial of his motion to suppress heroin found during a search of his car and the sufficiency of the evidence to support his conviction for the knowing possession of this illegal drug. Finding no reversible error, we affirm the conviction.

## FACTS

On May 25, 1982, Sergeant David Brink of the Corpus Christi Police Department, acting on information supplied earlier that day by a reliable informant, obtained a warrant to search an apartment at 2708 Mary Street in that city. His informant told Sergeant Brink that appellant was the source of heroin allegedly located at this address. Brink relayed this information to the officers who executed the warrant—Captain Crisp, Sergeant Whitman, Sergeant Williams, and Police Officers Stacey and Almanza. The officers executed the warrant the same day.

While the police were searching the residence and after they had found a quantity of heroin on the premises and had detained one Hernandez, who was described in the warrant affidavit, Maldonado came to the house.[1] When Crisp asked appellant who he was, Maldonado replied that he was Tomas Garcia. Almanza, who was searching an adjacent room, overheard this exchange and came to the living room to see whether he could help. Almanza, who had known Maldonado for about a year preceding the search, during which time he had had various "personal encounters" with Maldonado and had "seen him involved or

---

1. The search warrant affidavit did not name Maldonado or describe him (nor did the warrant itself). The affidavit did accurately describe, though it did not name, Hernandez, whom the officers found on the premises when executing the warrant (the only other person then found on the premises was a small child). After the description of the premises (the "suspected place") and of the person who turned out to be Hernandez (the "suspected party"), the affidavit states:

 "On this date, May 25, 1982, affiant received information from a reliable and credible informant whose name will not be revealed for security reasons, that said informant had been inside the above suspected place within the past twenty-four (24) hours and while there, said informant saw the above suspected party to be in possession of a quantity of heroin. The affiant believes this informant to be reliable and credible for the following reasons: this same informant has given affiant information on numerous occasions, which on each and every occasion, has proven true and correct. This same informant in the past

 has purchased heroin for the affiant in order to establish known heroin dealers. On one occasion, information received from this informant led to the arrest of two (2) suspects and the seizure of a quantity of heroin. The informant is familiar with heroin as he has purchased and used heroin in the past."
 The affidavit also states that the affiant (Brink) believes on the basis of this information that the "suspected party" is concealing heroin, a controlled substance, at the "suspected place."
 The defense did not challenge the validity of the search warrant, as such, or the right of the officers, pursuant to the warrant, to search the 2708 Mary Street premises and arrest Hernandez and seize the heroin there (as distinguished from that in Maldonado's car). The defense did contend that the warrant did not authorize Maldonado's arrest or the search of his car. Similarly, the government conceded that when the magistrate issued the search warrant the police did not then have sufficient information to amount to probable cause to at that time procure a warrant for Maldonado's arrest or the search of his car.

talking to known heroin traffickers," had observed Maldonado driving his car between the searched premises and the house next door about thirty minutes or an hour before the search commenced. Upon now seeing Maldonado, Almanza asked Crisp what name the appellant had given, and Crisp replied, "Tomas Garcia." Almanza then asked appellant his name. The reply was, "No, my name is Tomas Maldonado. I am looking for Tomas Garcia." Maldonado was then advised of the warrant, patted down, and detained.

From inside the house, officers could see an individual, later identified as Eduardo Alvarado, sitting in the front passenger seat of Maldonado's car. Sergeant Whitman and Officer Stacey went to the car, asked Alvarado to step out, and, when he had done so, patted him down. The pat down yielded a bottle of orange-colored liquid that Crisp and Almanza correctly believed to be methadone, a controlled substance. The officers then arrested Alvarado.

While conducting an inventory search of Maldonado's car, Almanza found a small package containing a white substance later determined to be heroin. The package was sitting on the "console," a portable tray for holding drinks and small items, just in front of the middle of the front seat, and was partially covered by a paper bag or piece of paper.

Based on the discovery of the drug in his car, Maldonado was charged with simple possession of heroin in violation of 21 U.S.C. § 844(a). He consented to trial before a magistrate. After holding a hearing, the magistrate, on October 26, 1982, denied Maldonado's motion to suppress. Trial was had before a jury, and appellant

was found guilty on November 10, 1982. The magistrate assessed a sentence of one year to be served concurrently with a subsisting parole sentence, should appellant's parole be revoked. Maldonado then appealed his conviction to the district court and that court affirmed his conviction. This appeal followed.

## MOOTNESS

▮ We address first the government's motion to dismiss Maldonado's appeal as moot.[2] In support of its motion, the government points out that appellant has completed his one-year prison term and has been restored to his prior parole status.[3] The government argues that Maldonado therefore is suffering no current or ongoing prejudice as a result of his misdemeanor conviction and that any collateral consequences are speculative. We reject the claim of mootness.

The government relies in part on *St. Pierre v. United States*, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199 (1943), in which the Supreme Court held that completion of a six-month sentence for a criminal contempt conviction rendered the appeal moot "because, after petitioner's service of his sentence and its expiration, there was no longer a subject matter on which the judgment of this Court could operate." *Id.* at 42, 63 S.Ct. at 911. We have said, however, that the Court has since "expressly abandoned" the rule in *St. Pierre*. *In re Stewart*, 571 F.2d 958 (5th Cir.1978), citing *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977).

One of the exceptions to the mootness doctrine was first announced in *Sibron v.*

---

**2.** This motion was brought during the panel's consideration of this appeal. Maldonado has filed an opposition to the motion.

**3.** Appellant was found guilty in February 1976 of two counts of possession of heroin with intent to distribute and received a sentence of thirteen years in prison, plus a special parole of five years on each count, the sentences to run concurrently. He pleaded guilty in March 1976 to two counts of possession of heroin with intent to distribute and was sentenced on each

count to fifteen years in prison, plus a special parole term of five years. These sentences run concurrently with each other and with those imposed on the February 1976 convictions. The termination dates of his special and regular parole terms were not affected by his misdemeanor conviction. These convictions were under 21 U.S.C. § 841(a)(1); both were in the United States District Court for the Southern District of Texas.

*New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), in which the Court, recognizing as an "obvious fact" that most criminal convictions entail adverse collateral consequences, stated that the "mere possibility" of such consequences is enough to preclude a finding of mootness. *Id.* at 55, 88 S.Ct. at 1899.[4] Like Maldonado, the appellant in *Sibron* had been convicted on a misdemeanor count of possession. In assessing the potential adverse collateral consequences that might affect Sibron, the Court noted that his conviction could be used for impeachment and sentencing purposes, finding it irrelevant that Sibron had prior convictions. *Id.* at 55–56, 88 S.Ct. at 1889–1899. And the Court stated that "[t]here are doubtless other collateral consequences" which should be considered in such cases. *Id.* at 56, 88 S.Ct. at 1899.

We have since applied this exception to allow review of fully served sentences, including cases involving criminal contempt convictions, such as that in *St. Pierre.* See, e.g., *In re Stewart, supra; United States v. Schrimsher,* 493 F.2d 842, 843–44 (5th Cir.1974). Here, as in these cases, we find that the government has failed to show that the possibility of adverse collateral consequences is sufficiently minimal that it should be disregarded.

While Maldonado's conviction may not serve as the basis for his impeachment in federal court,[5] it is possible that it may serve this purpose in some state court proceeding. More important, his conviction on this count may have an effect on the amount of bail, *see Mimms,* or on any future sentence that Maldonado may receive. Of particular significance, the statute under which Maldonado was convicted allows the imposition of a harsher penalty

on a second violation under that statute. 21 U.S.C. § 844(a). Sentencing decisions in state court may also be affected by the fact of his conviction.

Nor does the Court's recent decision in *Lane v. Williams,* 455 U.S. 624, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982), affect the result in Maldonado's appeal. *Williams* involved a collateral habeas corpus appeal—rather than a direct appeal as in this case and *Sibron*—by two prisoners who sought only to have a portion of their sentence, a mandatory period of parole, removed. They did not attack their underlying guilty plea convictions nor did they seek the opportunity to plead anew. *Id.* at 630–31, 102 S.Ct. at 1326–27. In each case, their sentences and terms of parole had expired prior to the Court's consideration. They claimed, however, that they would suffer adverse consequences as a result of a finding of parole violation. In responding to these claims, the Court noted that decisions that might be made by a future employer or a sentencing judge would be more directly affected by the conduct underlying a parole violation than by the mere fact that such a violation had occurred. Maldonado's situation is not comparable to *Lane.*[6]

We find that the government has failed to meet its burden of showing that there is no sufficient possibility that adverse collateral consequences will occur as a result of appellant's conviction. Thus, we address the merits of his claim.

## VALIDITY OF THE SEARCH

Appellant contends that the district court erred in affirming the denial of his motion to suppress the heroin seized during the inventory search of his car. He argues

**4.** The Court in *Sibron v. New York* also announced a second exception to mootness, one that applies when a defendant could not have brought his appeal prior to the expiration of his sentence. 392 U.S. 40, 51–53, 88 S.Ct. 1889, 1896–1898, 20 L.Ed.2d 917. That exception is not at issue in the present case.

**5.** Federal Rule of Evidence 609 requires that the conviction be for more than a year before it can be used for impeachment purposes.

**6.** We also observe that the Court in *Lane v. Williams* specifically found that neither the doctrines of *Sibron* nor of *Carafras v. LaVallee,* 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968), applied to that case. *Carafras* was a habeas case in which the Court found that the appellant suffered civil disabilities as a result of the conviction on his record.

that he was unlawfully subjected to an arrest under circumstances justifying a less intrusive detention, if any, and that, therefore, no proper basis existed for the inventory search. We uphold the search and the admission of the heroin into evidence.

Maldonado first contends that the initial invitation by Captain Crisp for Maldonado to enter the apartment and the request as to his name effected an improper detention under the Fourth Amendment. He asserts that the facts of his case differ from those of *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), which allowed the detention of an occupant of a residence during the execution of a search warrant. In support of this assertion, he points out that he was not an occupant of the apartment and that, at the time Crisp first spoke to him, the Captain did not realize that Maldonado was the man named by the informant as the supplier of the drugs. Moreover, he notes that the occupant of the apartment, Hernandez, who was described though not named in the affidavit, had been detained by the time of appellant's arrival.

■ In reviewing a trial court's ruling on a motion to suppress based on live testimony at a suppression hearing, the trial court's purely factual findings must be accepted unless clearly erroneous, or influenced by an incorrect view of the law, and the evidence must be viewed in the light most favorable to the party prevailing below, except where such a view is either not consistent with the trial court's findings or is clearly erroneous considering the evidence as a whole.[7]

■ Viewing in this light the evidence of what actually transpired, we agree with the implicit determination by the district court and the magistrate that Crisp's initial contact with Maldonado did not constitute a seizure. It is well-established that not every contact between citizen and police is a "seizure" within the meaning of the Fourth Amendment. *United States v. Williams,* 647 F.2d 588, 591 (5th Cir.1981); *Smith v. Heath,* 691 F.2d 220, 223 (6th Cir.1982) (person has been seized only when, in view of all the circumstances, a reasonable person, free of crime, would have believed himself not free to leave). In terming his response to the Captain's inquiry a "detention," Maldonado relies on *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), in which the Court found an illegal seizure where officers stopped a man in an alley, asked his name, and then frisked and arrested him when he declined to give it. In *Brown,* however, the defendant was purposely stopped in a public alley by officers to conduct an inquiry, and their actions involved far more than simply asking Brown's name. "It could not have been plainer under the circumstances there presented that Brown was forcibly detained by the officers." *United States v. Mendenhall,* 446 U.S. 544, 556, 100 S.Ct. 1870, 1878, 64 L.Ed.2d 497 (1980). Here, by contrast, Maldonado entered a house in which officers were conducting a search and in which they had already found some heroin. Moreover, in *United States v. Pulvano,* 629 F.2d 1151, 1155 (5th Cir.1980), we noted that it is the law in this Circuit that no seizure has occurred when a federal agent, using a drug courier profile, requests airline passengers to produce their tickets and some form of identification, so long as the passengers respond voluntarily and there is no coercion. The officer's initial contact with Maldonado, who was in the course of entering the house and stated that he was looking for someone, was less intrusive than a stop in a public airport. The evidence supports a finding that Maldonado's entry into the house and his an-

---

7. *See United States v. Gomez-Diaz,* 712 F.2d 949, 951 (5th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 731, 79 L.Ed.2d 191 (1984); *United States v. Pozos,* 697 F.2d 1238, 1243 (5th Cir. 1983); *United States v. Ehlebracht,* 693 F.2d 333, 337 n. 6 (5th Cir.1982); *United States v. Sanford,* 658 F.2d 342, 343 (5th Cir.1981), *cert. denied,*

455 U.S. 991, 102 S.Ct. 1618, 71 L.Ed.2d 852 (1982); *United States v. Vargas,* 643 F.2d 296, 297 (5th Cir.1981); *United States v. Metz,* 608 F.2d 147, 154 (5th Cir.1979), *cert. denied,* 449 U.S. 821, 101 S.Ct. 80, 66 L.Ed.2d 24 (1980); *United States v. Duckett,* 583 F.2d 1309, 1313 (5th Cir.1978).

swer to the officer's question were voluntary.[8]

Nor does *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), dictate a different result. In *Ybarra*, the Court held illegal the late afternoon pat-down search of a patron standing by a pinball machine in a bar open to the general public, with some nine to thirteen customers present. The police had a warrant to search the bar and had grounds to believe a bartender employed there sold heroin, but had no information whatever about the patron nor any reason to suspect that he presented a danger or was committing a crime. The Court emphasized that one's "mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Id.* at 91, 100 S.Ct. at 342 (citation omitted). *Ybarra* involved both far more intrusive conduct, and far less suspicious circumstances respecting the complainant, than are present here. And, by the time officers commenced a search of Maldonado and told him that he was being detained, they already had become aware of his identity, his giving of a false name, and his possible involvement with the heroin already found on the premises pursuant to the report of the informant who had told them Maldonado was the supplier.

Maldonado next challenges his continued detention and, in particular, his arrest by the police. While he concedes that circumstances were "suspicious," he asserts that he should have been released when the pat-down search proved fruitless. The district court held that the officers executing the warrant were justified in detaining and arresting Maldonado because they had reasonable suspicion—based on information that he supplied heroin allegedly being sold on the premises [9] and on their discovery of the drug there before his arrival—that he was engaged in illegal activity. The court also relied on Officer Almanza's prior knowledge and observations of Maldonado's being involved and talking with drug traffickers, the Officer's observation of Maldonado earlier in the day in close proximity to the premises, and Maldonado's giving of a false name.[10] The court found that these facts were sufficient to cause a reasonable person to believe that Maldonado was committing a drug-related offense.

■ Probable cause for arrest is present "when the facts and circumstances within the knowledge of the arresting officer and of which he has reasonably trustworthy information are sufficient in themselves to warrant in a person of reasonable caution the belief that an offense has been or is being committed." *United States v. Woolery*, 670 F.2d 513, 515 (5th Cir.), *cert. denied*, 459 U.S. 835, 103 S.Ct. 78, 74 L.Ed.2d 75 (1982). The considerations involved in dealing with probable cause are not technical ones, "but rather factual and practical ones of everyday life on which reasonable and prudent persons, not legal technicians, act." *Id.* Applying these standards to the case at hand, we agree with the court's finding of probable cause.

Moreover, in addition to the reasons relied on by the district court, when Maldonado gave a false name to Crisp, he committed a misdemeanor for which he could be arrested under Texas law. 4 Tex. Penal

---

**8.** Maldonado testified at the suppression hearing that he was told to "come in." He did not state, however, that he was ordered to do so or that he was escorted inside in any manner. Moreover, the magistrate and the district court were not required to credit Maldonado's testimony.

**9.** This information was from a previously reliable informant whose statement as to the presence of heroin and an individual meeting Hernandez's description at the premises had already been proven accurate.

**10.** Maldonado denied that he gave a false name. His story was that he told the police he was looking for *Tomas Garcia* to fix his brakes. No Tomas Garcia lived at this address, however, and Maldonado was unable to produce anyone by this name. He was also unable to show that his brakes needed repair. Although he claimed he had them fixed shortly thereafter, he produced no evidence that he had done so. The magistrate and the district court were not compelled to accept Maldonado's version of the events.

Code Ann. § 38.02 (Vernon 1974). We have upheld arrests for similar violations.[11] *Ehlebracht,* 693 F.2d at 337–38 (Georgia statute). *See also Pulvano,* 629 F.2d at 1155–56 (Georgia statute). Maldonado, however, argues that his violation of section 38.02 cannot justify his arrest because this statute was declared unconstitutional in *Spring v. Caldwell,* 516 F.Supp. 1223 (S.D.Tex.1981), *reversed on other grounds,* 692 F.2d 994 (5th Cir.1982).[12] This argument is mistaken.

While the district court in *Spring* purported to invalidate section 38.02 "on its face," that case involved an individual's *failure* to identify himself, not the willful giving of a *false* name. Because Texas law allows severance[13] of the provision of section 38.02 justifying Maldonado's arrest from that held invalid by the district court in *Spring,* we find that *Spring,* even if otherwise correctly decided by the district court, does not govern the instant case. Appellant's arrest was justified under this statute.

■ Having upheld Maldonado's arrest, we also uphold the search of his car. The court below found that the heroin was discovered during a valid inventory search conducted according to standard police practices. Such searches are permissible when conducted following a lawful arrest. *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *United States v. Staller,* 616 F.2d 1284

(5th Cir.), *cert. denied,* 449 U.S. 869, 101 S.Ct. 207, 66 L.Ed.2d 89 (1980).

There is an additional reason for upholding the search of Maldonado's car. Even if we assume that probable cause was lacking to support appellant's arrest, plainly there existed a sufficient basis to detain him for a short period during which officers could determine the identity of his passenger, Alvarado. Whether or not the officers' pat down of Alvarado after he got out of the car was justified, an issue we do not decide, Maldonado lacks standing to complain of the search of Alvarado or the consequent discovery on Alvarado's person of the methadone, a controlled substance. *United States v. Payner,* 447 U.S. 727, 731–37, 100 S.Ct. 2439, 2444–47, 65 L.Ed.2d 468 (1980). The officers' discovery of the methadone on Alvarado, who had just gotten out of the car, showed that the car had been used to transport a controlled substance. This discovery, along with the other information that they had, gave the officers probable cause to search appellant's car without a warrant. *See United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). In *Ross,* the Court held that, when probable cause exists to believe that a car contains contraband, a warrantless search of the car is valid. It is "the 'laminated total' of the facts available" that serves as justification for a warrantless search of a vehicle. *United States v. Shaw,* 701 F.2d 367, 376 (5th Cir.1983).

We reject appellant's challenge to the search of his car.

---

**11.** It is not essential to support the arrest that the officers arrested Maldonado *because* he gave a false name. What is important is that the giving of a false name be related to the crime—narcotics violation—for which he was arrested. *See Trejo v. Perez,* 693 F.2d 482, 486 (5th Cir. 1982). (The test is "whether the conduct that served as the basis for the charge for which there was no probable cause could . . . also have served as the basis for a charge for which there was probable cause."). Here, it is reasonable to conclude that Maldonado gave a false name to divert suspicion from him concerning the drug offenses; the district court, in fact, specifically relied on the giving of a false name in finding probable cause. Thus, the requisite nexus was present.

**12.** We reversed the judgment in this case based on a finding that the district court lacked subject matter jurisdiction. Thus, we did not reach the merits of the decision regarding the constitutionality of the statute.

**13.** The Texas Penal Code contains a severability clause which reads:

"Sec. 7. SEVERABILITY. If any provision of this Act or the application . . . is held invalid, such invalidity shall not affect other provisions or applications of the Act which can be given effect without the invalid provision or application, and to this end the provisions of this Act are declared to be severable." 4 Tex. Penal Code Ann. at 397 (Vernon 1974).

## SUFFICIENCY OF THE EVIDENCE

 Appellant next contends that the evidence was insufficient to support his conviction for the knowing possession of heroin. Because Maldonado failed to move for a judgment of acquittal,[14] our review of this issue is a limited one: we look only to see whether his conviction constituted "a manifest miscarriage of justice." *United States v. Freeze*, 707 F.2d 132, 135 (5th Cir.1983); *United States v. Mattox*, 689 F.2d 531, 532 (5th Cir.1982). In reviewing his contention, as with any challenge to the sufficiency of the evidence, we must consider all the evidence, direct and circumstantial, in the light most favorable to the jury's verdict, accepting all reasonable inferences and credibility choices in favor of that verdict. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Salinas*, 654 F.2d 319, 327 (5th Cir.1981).

 Maldonado's conviction in this case rested on his constructive possession of the heroin found in his car; there was no showing or claim of actual possession. We have held that "[c]onstructive possession may be inferred from the ownership, or the exercise of dominion or control of the vehicle in which the contraband is concealed." *Freeze*, 707 F.2d at 135. *See United States v. Martinez*, 588 F.2d 495 (5th Cir. 1979) (possession of the key to the trunk sufficient even where defendant was not in the car when the contraband was confiscated). *Mere* ownership of a vehicle, however, is not sufficient to prove a constructive possession. *United States v. Galvan*, 693 F.2d 417, 421 (5th Cir.1982) (owner had loaned car to another); *United States v. Barrera*, 547 F.2d 1250, 1255–56 (5th Cir. 1977) (no showing that alleged owner exerted any control over a car in which contraband was found). Knowledge is also essen-

tial to a conviction for possession. *Freeze*, 707 F.2d at 136.

 Here, it is undisputed that Maldonado was both the owner and driver of the car in which the heroin was found. He argues, however, that Alvarado, who was left sitting in the passenger seat when Maldonado entered the residence being searched, had ample opportunity to place the heroin on the console. Thus, he asserts, a reasonable jury could not have found him guilty beyond a reasonable doubt.[15] At trial, Alvarado, a long-time heroin user, testified that the heroin was his and that Maldonado knew nothing of it. He stated that he placed the heroin on the console rather than in his pocket because he did not have a rubber band to keep it from spilling. The government, however, presented evidence, in the form of a photograph of the packet and in testimony by Officer Almanza, that the packet of heroin was secured with rubber bands. Further, much of Alvarado's testimony simply strains belief. For example, he testified that he never bought drugs but was given leftover heroin by his friends, that he could quit using the drug at any time he wished, that he had left the heroin in a drainpipe and had retrieved it shortly before Maldonado picked him up, and that he had found the methadone simply lying on the ground the day of his arrest.

We find that the jury reasonably could have inferred that Alvarado was not a credible witness and that he had never even seen the heroin, let alone possessed it. The logical conclusion is that the drug belonged to Maldonado. He drove the car to the Mary Street address and came to the premises where the police had just found heroin. His explanation for his presence was

---

**14.** Maldonado also failed to challenge the sufficiency of the evidence in his appeal to the district court. That court, however, on its own motion, concluded that the evidence was sufficient to sustain appellant's conviction.

**15.** Maldonado also asserts that the absence of his fingerprints on either the packet or the pa-

per bag indicates that he did not own the heroin. The police, however, did not test the paper bag for prints. Their check of the plastic packet yielded no clear fingerprints—either of Maldonado or of *Alvarado*. The absence of fingerprints under these circumstances is essentially a neutral factor.

strained and lacking in credibility.[16] He was absent from the car only for a brief interval before the inventory search and the discovery of the heroin. *Compare United States v. Gonzalez,* 703 F.2d 807 (5th Cir.1983) (finding evidence insufficient where three hours elapsed between defendant's presence in van when it was empty and its later abandonment loaded with marihuana). Maldonado's conviction was not a miscarriage of justice.

### CONCLUSION

We affirm the determinations below that the police were justified in detaining Maldonado, and upholding the search of his car and the admission of the heroin found during that search into evidence. We also find that his conviction was supported by the evidence and was not a miscarriage of justice. No other claims of error being presented, Maldonado's conviction is accordingly affirmed.

AFFIRMED.

**16.** Maldonado testified that he went to the residence at 2708 Mary Street to have his brakes worked on by Tomas Garcia. He said that Garcia had repaired the points on his car about four months earlier at this address. Maldonado, however, was unable to produce anyone by this name. In addition, Juan Ochoa, who had lived next door to the residence on Mary Street for about eleven months, testified that he was not aware of anyone named Tomas Garcia who lived or had lived at that address. He stated that Hernandez, who was detained by police during the search, had lived there for about four months and that a man named Ortiz lived there before Hernandez.