**UNITED STATES of America**

v.

**Rafael TORMES–ORTIZ.**

**CR. No. 88–0253 (GG).**

United States District Court,
D. Puerto Rico.

March 15, 1989.

See also 710 F.Supp. 409.

Guillermo Gil, Everett M. De Jesus, U.S. Dept. of Justice, Guaynabo, P.R., for plaintiff.

Moore and Rabin, P.A., Robert L. Moore, Miami, Fla., for defendant.

## ORDER

GIERBOLINI, District Judge.

Defendant Rafael Tormes–Ortiz (Tormes) moves to suppress certain evidence seized pursuant to an allegedly unlawful arrest. The matter was referred to the magistrate who held an evidentiary hearing on November 17, 1988. After the parties filed opposing memoranda of law, the magistrate issued his Report and Recommendation of January 23, 1989. He was of the opinion that the motion to suppress should be denied because defendant's arrest was supported by probable cause. An opposition has been filed.

### The Facts

At approximately 12:15 a.m. on the morning of June 24, 1988 police officer Pedro L. González–Serrano, assigned to the San Sebastián police station, was on patrol near the town of San Sebastián when he noticed a low-flying plane overhead with its lights extinguished. The plane was flying over an abandoned airstrip that was known to have been used for illegal narcotics smuggling. He immediately notified narcotics agents of the suspicious airplane by radio. From a distance of 200–300 yards, he observed the plane land at the airstrip. As he and other police who had arrived approached the airstrip, officer González heard the voices of what he thought were twelve to fifteen men, although he was unable to see anyone. Nevertheless, the police were spotted and shots were fired in their direction. They took cover behind their automobiles and returned fire.

After it became apparent that the men had fled, the police approached the airstrip. They found an aircraft wrecked on the side of the airstrip. The airstrip was surrounded by tall grass and dense vegetation. Police noticed vehicle tracks in the grass which led to an overturned four-wheel drive vehicle. In the back of the vehicle they found weapons, flashlights, and bags containing what appeared to be cocaine.

Next to the vehicle officer González noticed footprints following a trail which led away from the airstrip. It had rained heavily the day before, so footprints of what appeared to be both tennis shoes and regular-soled shoes were visible. Officer González followed the tracks along the muddy trail until they reached an unpaved road. The tracks continued down the road. The road soon intersected with a highway which led to the town of San Sebastián.

From that point, the town of San Sebastián is about ten to twelve minutes away on foot.

Unable to continue tracking the suspected smugglers, officer González returned to his car at the airstrip. The sun was rising. His clothes were wet and muddy and he had scratches on his body. He alerted police and local bus drivers to be on the lookout for unknown men with scratches wearing wet and muddy clothes. At about the same time, a local resident reported to police that she had been approached by a male with wet and muddy clothes who asked her for a cup of coffee and identified himself as a student. Officer González proceeded to patrol the area. He stopped a bus and asked if the passengers had seen anyone matching the aforementioned description.

At about 8:30 a.m. officer González returned to the police station in San Sebastián. While there, a call was received from a man who identified himself as a public transportation worker who stated that two strangers with scratches and dirty clothes were cleaning themselves and their shoes in a pool of water near the bus terminal in the town's central plaza. While on route to the plaza in a squad car, officer González, joined by three other uniformed policemen, was flagged down by two local bus drivers. They told him that the men police were looking for were on one of the streets that skirted the central plaza.

When officer González arrived at the public square he immediately noticed two men whose clothes had mud stains and were dripping water. Both men wore relatively clean tennis shoes and had scratches on their arms and faces. One of the men was seated on a bench in the square. Officer González approached him and asked him where he was from. The man replied that he was not from San Sebastián. Officer González immediately arrested him. The man was later identified as co-defendant José Logroño–Cruz.

Defendant Rafael Tormes–Ortiz, who also matched the aforementioned description, was making a call from a telephone booth about ten feet away from Logroño.

As Logroño was being arrested he kept looking over at Tormes. Officer González immediately told one of the other officers to arrest Tormes. Tormes was handcuffed and taken to the San Sebastián police station where he was interrogated and searched. Although Tormes made no statements, several items of physical evidence were seized.

*Probable Cause*

■ The sole issue before us is whether police had probable cause to arrest defendant Tormes. Probable cause exists when the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that the suspect had committed or was committing an offense. *Draper v. United States*, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959); *United States v. Figueroa*, 818 F.2d 1020, 1023–24 (1st Cir. 1987).

■ The determination of probable cause does not rest on isolated facts; rather it depends upon the cumulative effect of the facts in the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 231–32, 103 S.Ct. 2317, 2328–29, 76 L.Ed.2d 527 (1983); *United States v. Baldacchino*, 762 F.2d 170, 175 (1st Cir.1985). Probable cause is a fluid concept turning on the assessment of probabilities in particular factual contexts, not readily reduced to a neat set of legal rules. *United States v. Figueroa*, 818 F.2d 1020, 1024 (1st Cir. 1987). Probable cause requires probability, not a prima facie showing of criminal activity. *Baldacchino, supra*, 762 F.2d at 175. The probable cause determination involves common sense considerations of everyday life on which reasonable and prudent persons act, not abstract technical distinctions. *Gates, supra*, 462 U.S. at 231–32, 103 S.Ct. at 2328–29; *United States v. Maldonado*, 735 F.2d 809, 815 (5th Cir.1984).

■ In the case before us, officer González had every reason to believe that the men who had attempted to smuggle cocaine would have wet and muddy clothes.

He had strong reason to believe that their bodies, like his, would have scratches. He had personal knowledge that at least one of the men would be wearing tennis shoes. He also made the logical assumption that these men would attempt to flee the area, using public transportation to do so. Moreover, at least three ordinary citizens, applying common knowledge and common sense, believed that these two men were indeed the smugglers sought by police.

Defendant alleges that police did not have probable cause to arrest defendant Tormes and argues that this case should be decided consistent with *United States v. Webster*, 750 F.2d 307 (5th Cir.1984), *cert denied*, 471 U.S. 1106, 105 S.Ct. 2340, 85 L.Ed.2d 855 (1985), decided by the Court of Appeals for the Fifth Circuit. In *Webster*, police arrived at an airport only to see an airplane laden with marijuana taking off. When police approached three men who appeared to be waiting for the plane, the men ran into the surrounding woods. *Id.* at 312–13. Early the next morning, a local police officer spotted an unidentified man on a roadside near the airport. The man, who apparently spent the night in the woods, had wet and muddy clothes. *Id.* at 324. Without discovering the man's identity, the officer ordered the man into the car and, in effect, arrested him. *Id.* at 313. The court held that probable cause was lacking for an arrest based solely on: (1) presence in the general vicinity of a crime hours after its commission; (2) while wearing muddy clothes; and (3) acting in an unusual manner. *Id.* at 324.

The facts of *Webster* bear an obvious similarity to the case at bar. The three factors listed in *Webster* are also present here. Nevertheless, while this is a close question, we find several additional indicia of criminality here which pushed officer González' suspicions past the threshold of probable cause. Here, the logical connection between defendants and the crime was not just their muddy clothes. Other characteristics also pointed to their involvement; they wore tennis shoes and had scratches on their arms and faces.

The positive identification of defendants by others in the community provided an additional reason to believe that they had attempted to smuggle narcotics the night before. While arresting strangers based on wild or anonymous charges by townspeople is patently unconstitutional, the fact that numerous people clearly identified the defendants suggests that they had characteristics indicating involvement in the nefarious nocturnal narco-trafficking operation. Some deference must be paid to the common sense of both townspeople and police that these men were indeed involved. Defendants were not arrested in an arbitrary roundup or indiscriminate sweep of the area. No other men were arrested in the plaza of San Sebastian that morning. Taken together with the factors also present in *Webster*, we find that the additional indications of criminal involvement provided officer González with probable cause to arrest defendant Tormes.

Wherefore, in view of the above, the Magistrate's Report and Recommendation of January 23, 1989 recommending that defendant's motion to suppress be denied is hereby APPROVED and the present appeal is DISMISSED.

SO ORDERED.