# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 98-11503

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID LYNN BAKER,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas
(4:98-CR-139-1-A)

November 23, 1999

Before POLITZ, DeMOSS, and BENAVIDES, Circuit Judges.

POLITZ, Circuit Judge:[*]

David Lynn Baker seeks review of the district court's order denying his motion to suppress evidence. For the reasons assigned, we vacate the challenged order and remand.

## BACKGROUND

On the morning of July 16, 1998, Officer Greg Bewley[1] received a call from

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Officer Bewley, an employee of the City of Grapevine Police Department, is assigned to the Dallas/Fort Worth Airport Narcotics Task Force of the Drug Enforcement Administration.

American Airlines regarding a passenger named David Baker, who made a cash purchase of a round-trip ticket for travel from Los Angeles, California, to Springfield, Missouri. The ticket was purchased on the date of travel with a return on August 16, 1998.[2] Baker was traveling with Robert Hammond on a flight that was scheduled to arrive at the Dallas/Fort Worth International Airport around 6:20 a.m., connecting at 7:35 a.m. with a flight to Springfield. He checked no baggage.

After receiving this information, Officer Bewley and two other task force officers observed passengers as they deplaned the Los Angeles flight. They tentatively identified two of the passengers as Baker and Hammond because they were the only men on the flight who appeared to be traveling together. The officers watched Baker as he walked alone down the terminal. He was carrying a shoulder bag and he looked over his shoulder three times as he walked through the terminal and then entered a men's room. After Baker exited the men's room Officer Bewley approached him, displayed his credentials, and asked to speak to him. Baker assented. Officer Bewley requested and examined Baker's airline ticket and driver's license. He asked Baker whether he was traveling with anyone; Baker responded that he was not. When asked about the purpose of his trip, Baker replied that he was looking into buying some motorcycle parts. Officer Bewley informed Baker that it was his job to interdict narcotics smuggled through the airport and asked to inspect Baker's shoulder bag. Baker declined. Officer Bewley kept Baker under surveillance as he proceeded to his gate.

---

[2] Based upon his experience, Officer Bewley viewed the thirty-day return date as indicating that Baker actually intended to travel one-way.

2

Officer Bewley called the Grapevine Police Department and learned that Baker had been arrested in Texas for felony possession of a controlled substance, penalty group two. He speculated that the earlier arrest was for possession of methamphetamine, and he suspected that Baker currently was carrying methamphetamine due to the early hour of the flight and the fact that there had been other methamphetamine seizures from such flights. Meanwhile, the other officers spoke with Hammond who told them that he was traveling with Baker.

As Baker was seated in the gate area waiting for his flight to Springfield, Officer Bewley re-approached him and again asked if he was traveling alone. After Baker denied that he was traveling with anyone, Officer Bewley informed him of Hammond's admission that they were traveling together. Baker did not respond. Officer Bewley then asked Baker if he ever had been arrested for a drug offense. Baker replied that he had been arrested on a misdemeanor charge for possessing a small amount of marihuana. He denied ever being arrested on a felony drug charge. Officer Bewley informed Baker that he was aware of Baker's arrest on a felony narcotic charge and suspected that Baker was then in possession of a controlled substance. The officer informed Baker that he and his bag would be detained until a dog could sniff his bag.

Baker was taken by the officers outside the terminal to a vehicle. They then conducted a pat-down search to determine whether Baker possessed any weapons. As he conducted the search, Officer Bewley felt something inside one of Baker's boots, pulled up Baker's jeans, and saw a knife pouch. When asked what was in

the pouch, Baker replied that it contained marihuana. Baker was then handcuffed and transported to the DEA office at the airport, where a narcotics dog sniffed and alerted on Baker's bag. After a search warrant was secured, Baker's bag was searched and three bundles of methamphetamine were recovered.

KEYBOARD(Enter Background, press Continue) Baker was indicted for possession with intent to distribute more than one kilogram of a mixture and substance containing a detectable amount of methamphetamine. He filed a motion to suppress, maintaining that reasonable suspicion did not exist for his detention for the dog sniff of his shoulder bag, and that the drugs should be suppressed as fruits of the poisonous tree. Baker maintains that he was arrested without probable cause when Officer Bewley announced that he suspected Baker of possessing a controlled substance and that he intended to detain Baker for a check of his shoulder bag. Baker contends that the evidence discovered as a consequence of this illegal arrest must be suppressed. The district court was of the view that the facts relevant to Baker's motion were undisputed and that a suppression hearing was not necessary. The court then denied the motion to suppress, concluding that there was reasonable suspicion that Baker's shoulder bag contained narcotics, thereby warranting a dog sniff of the bag.[3] The district court also concluded that the narcotics inevitably would have been discovered, whether or not Baker was under arrest when Officer

---

[3] The district court pointed out that (1) Officer Bewley had been advised to be on the lookout for Baker and Hammond; (2) he knew Baker had made a cash-purchase of a round-trip ticket for an early-morning flight from a source city; (3) he knew methamphetamine had been seized on similar flights; (4) Baker did not check any luggage; (5) Baker lied about having a travel companion; and (5) Baker lied about having been previously arrested on felony drug charges.

Bewley announced his suspicion and intention to detain Baker, or whether there was probable cause for an arrest.  This timely appeal followed.[4]

## ANALYSIS

We apply a two-tier standard of review to a trial court's determination of reasonable suspicion and probable cause regarding the constitutionality of investigative stops and searches under the fourth amendment.[5]  The court's ultimate conclusion on reasonable suspicion or probable cause, a mixed question of law and fact, is reviewed *de novo*.[6]  The events leading up to the search or seizure are reviewed for clear error, giving "due weight to inferences drawn from those facts by resident judges and local law enforcement officers."[7]  In  reviewing a district court's ruling on a motion to suppress, we construe the facts in the light most favorable to the prevailing party.[8]

In **United States v. Berry**,[9] we noted that courts should be ever mindful of the constitutional rights of citizens and should liberally construe the constitutional

---

[4]  After his motion to suppress was denied, Baker entered a conditional guilty plea in accordance with FED. R. CRIM. P. 11(a)(2), reserving his right to appeal the order denying his motion to suppress.  The agreement provided that Baker could withdraw his guilty plea if he succeeded on appeal.

[5]  **United States v. Tompkins**, 130 F.3d 117 (5th Cir. 1997), *cert. denied*, ___ U.S. ___, 118 S.Ct. 1335 (1998).

[6]  **Id.**

[7]  **Id.** at 120.

[8]  **United States v. Cardenas**, 9 F.3d 1139 (5th Cir. 1993), *cert. denied*, 511 U.S. 1134 (1994).

[9]  670 F.2d 583, 596 (5th Cir. Unit B 1982) (citation omitted).

provisions for the security of person and property to avoid any "stealthy encroachments" on such rights. We also observed that, although the government has an exceedingly strong interest in ending drug trafficking, we may not suspend the fourth amendment in the effort.[10] We must conclude that such was not done herein.

On appeal, Baker asserts that the district court erred in denying his motion to suppress, maintaining that he was arrested without probable cause when Officer Bewley decided to detain him and his shoulder bag for transportation to the DEA office for a dog sniff. Because an arrest without probable cause is illegal, Baker contends his motion to suppress should have been granted. In its order denying Baker's motion to suppress, the district court does not address whether an arrest was effectuated in the airport terminal prior to the discovery of marihuana in the knife pouch. Rather, the court determined that reasonable suspicion existed to justify a dog sniff of Baker's bag and that the narcotics inevitably would have been discovered. We conclude that the challenged order is flawed in its legal reasoning and lacks a sufficient evidentiary foundation.

Based on the uncontested factual findings in the district court's order, precedent compels the conclusion that Baker was placed under arrest in the airport terminal shortly after Officer Bewley approached him for the second time. Our conclusion is based on the teachings in **Florida v. Royer**,[11] **Berry**,[12] **United States**

---

[10] **Id.**

[11] 460 U.S. 491 (1983). In **Royer**, the Supreme Court recognized that safety and security considerations might justify moving a suspect from one location to another during an

**v. Place**,[13] and **United States v. Hill**,[14] as the factual findings in the case at bar are akin to the facts in these cases. Even if there was reasonable suspicion to justify a dog sniff,[15] we must conclude that the detainment evolved into an arrest when

---

investigatory detention in an airport without transforming a **Terry** stop into an arrest. Nevertheless, the Supreme Court held that agents, in moving Royer from the airport concourse to an interrogation room elsewhere in the airport to effectuate a baggage search, transformed a **Terry** stop into an arrest requiring probable cause. The facts in the present case are equally or more compelling, as Baker was removed from the airport terminal to be placed in a vehicle for transportation to another location within the airport complex.

  [12]  In **Berry**, 670 F.2d at 602, we held that

> [r]equiring an individual to accompany police to an office indicates a detention for a time period longer than that permitted in a seizure; cuts the individual off from the outside world, without indication of when he might be allowed to leave; places him in unfamiliar surroundings; may subject him to increased implicit police pressure; and leaves him without third parties to confirm his story . . . . Such a detention, if not by consent . . . is only constitutional if accompanied by probable cause.

  [13]  462 U.S. 696 (1983). In **Place**, the Supreme Court suppressed evidence that was uncovered by a dog sniff where a suspect's luggage was seized for ninety minutes and transported to another location for the dog sniff. The Court concluded that the detention of the luggage on less than probable cause violated the fourth amendment. Again, the facts in the present case are clearer than the facts in **Place**, as both Baker and his luggage were detained for transport to another location where a dog sniff could be conducted. Although the record is unclear regarding the time period in which Baker and his bag were detained, we do not believe it is appropriate to apply a rigid time limitation to investigatory detentions. **Place**, 462 U.S. 709-10 (questioning the wisdom of a rigid time limitation and declining to adopt an outside time limitation for a permissible **Terry** stop). Rather, we believe the totality of the circumstances surrounding the detention controls.

  [14]  626 F.2d 429 (5th Cir. 1980). In **Hill**, we held that a DEA agent's request that a suspect accompany him to the airline office, without informing him that he was free to leave, exceeded the bounds of a **Terry** stop and amounted to an arrest requiring probable cause. We reasoned that the agent had not limited himself to a brief, on-the-spot questioning, and the request to accompany him to the office signaled a more intensive interrogation that was to occur in a place other than where it began. In the case at bar, the facts reflect that Officer Bewley did not ask Baker to accompany him to the DEA office for a dog sniff. Rather, he told Baker that he was being detained. Officer Bewley did not inform Baker that he was free to leave.

  [15]  We do not hold that there was reasonable suspicion to detain Baker in a **Terry**-type setting. **Terry v. Ohio**, 392 U.S. 1 (1968).

7

Officer Bewley informed Baker of his belief that Baker was in possession of narcotics and determined that Baker and his bag would be detained and transported to another location for a dog sniff. At this point, reasonable suspicion–if any existed–was no longer sufficient to justify the officers' actions. Rather, probable cause for an arrest was required.[16] Absent probable cause, the evidence obtained after Baker's arrest is inadmissible and would have to be suppressed.

Although the district court did not address whether there was an arrest or probable cause, it determined that the drugs inevitably would have been discovered. Under the inevitable discovery exception, evidence is not subject to suppression if the government demonstrates by a preponderance of the evidence that: (1) there is "a reasonable probability that the contested evidence would have been discovered by lawful means in the absence of police misconduct" and (2) the government was in active pursuit of "a substantial alternate line of investigation at the time of the constitutional violation."[17] We are not persuaded. We find an insufficient basis in the record on appeal and in the trial court's factual findings to support the essential conclusion that the discovery of the drugs was inevitable.[18]

---

[16] **Berry**, 670 F.2d at 601. Probable cause exists "when the facts and circumstances within the knowledge of the arresting officer and of which he has reasonably trustworthy information are sufficient in themselves to warrant in a person of reasonable caution the belief that an offense has been or is being committed." **United States v. Maldonado**, 735 F.2d 809, 815 (5th Cir. 1984) (citation omitted).

[17] **United States v. Kirk**, 111 F.3d 390, 392 (5th Cir. 1997) (citation omitted).

[18] In denying the motion to suppress the trial court states, "Whether or not defendant was arrested, the sniff of his shoulder bag by the dog would have alerted officers to the presence of the methamphetamine." Yet, the record is devoid of any evidence that a dog sniff would have occurred absent Baker's arrest and transportation to the DEA office.

8

We conclude that Baker was placed under arrest at the time that Officer Bewley informed him of his suspicion and detained both Baker and his bag for transportation by vehicle to the DEA office for a dog sniff. The record before us does not contain sufficient evidence of probable cause for an arrest, nor does it support the inevitable discovery exception. Accordingly, we must vacate the challenged order and remand.

On remand, the district court is to conduct an appropriate suppression hearing and determine whether probable cause existed at the time Baker was arrested. If the trial court concludes that there was no probable cause for that arrest, it may deny the motion to suppress based upon the inevitable discovery exception if the government meets the burden set forth in **Kirk**.

The order denying suppression of evidence is VACATED and the matter is REMANDED for further proceedings consistent herewith.